655 So.2d 197 (1995)
Juan CASTILLO-PLAZA, M.D., and Juan Castillo-Plaza, M.D., P.A., Petitioners,
v.
Marsha GREEN, Respondent.
Lydia D. PIERRE, by and through Her Husband and Legal Guardian, Issonel Pierre, the Pierre Children and Issonel Pierre, Individually, Petitioners,
v.
NORTH SHORE MEDICAL CENTER, INC., James W. Porter, M.D., and Harari Porter, Blumenthal and Brown, M.D., P.A., D/B/a Emergency Medical Specialists of South Florida, Respondents.
Margarita GIRON, Petitioner,
v.
Jose J. NOY, M.D., Jose J. Noy M.D., P.A., Raul Ravelo, M.D., and Inter-American Institute of Hematology and Oncology, a Florida Corporation, Respondents.
Nos. 94-1428, 94-1493 and 94-1675.
District Court of Appeal of Florida, Third District.
May 24, 1995.
*198 Stephens, Lynn, Klein & McNicholas and Philip D. Parrish, Miami, for petitioners Juan Castillo-Plaza, M.D., and Juan Castillo-Plaza, M.D., P.A.
Don Russo, Russo & Talisman and Patrice A. Talisman, Coconut Grove, for petitioner Margarita Giron.
Robert J. Dickman and Karen L. Bzdyk, Coral Gables, for petitioners Lydia D. Pierre, etc., et al.
Colson, Hicks, Eidson, Colson, Matthews & Gamba and Tomas F. Gamba, Miami, for respondent Marsha Green.
Stephens, Lynn, Klein & McNicholas and Philip D. Parrish, Miami, for respondents Raul Ravelo, M.D., and Inter-American Institute of Hematology and Oncology and for respondents North Shore Medical Center, Inc.
George, Hartz, Lundeen, Flagg & Fulmer and Esther E. Galicia, Coral Gables, for respondents James W. Porter, M.D., and Harrari, Porter, Blumenthal and Brown, M.D., P.A., d/b/a Emergency Medical Specialists of South Florida.
Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin and Joel S. Perwin and Joel D. Eaton, Miami, for amicus curiae Academy of Florida Trial Lawyers.
Adorno & Zeder and Raoul G. Cantero, III, Coconut Grove, and Jay A. Ziskind, Miami, Christopher L. Nuland, Jacksonville, for amici curiae Dade County Medical Ass'n and Florida Medical Ass'n.
Hicks Anderson & Blum and Mark Hicks, Miami, for amicus curiae Physicians Protective Trust Fund.
Before SCHWARTZ, C.J., and HUBBART, NESBITT, BASKIN, JORGENSON, COPE, LEVY, GERSTEN, GODERICH and GREEN, JJ.

ON HEARING EN BANC
SCHWARTZ, Chief Judge.
These petitions for certiorari, which have been consolidated for en banc consideration, raise the common, currently contentious, issue of the effect of section 455.241(2), Florida Statutes (1989) on the right of the defense in a medical malpractice case to ex parte access to the plaintiff's non-party treating physicians. In one of the cases, Castillo-Plaza v. Green, Case no. 94-1428,[1] the trial judge *199 precluded any such communication whatever "except through the use of deposition as provided by the Florida Rules of Civil Procedure," and the defendants petitioned for certiorari review. In the other two, Pierre v. North Shore Medical Center, Case no. 94-1493 and Giron v. Noy, Case no. 94-1675, the trial court precluded ex parte discussions as to the patient's "medical condition," but allowed communications as to "the issues in this case or any other matter not otherwise prohibited by law."[2] In these cases, the respective plaintiffs seek certiorari review.
We hold alternatively that (1) because of a clearly stated exception contained in the statute, the privilege established by section 455.241(2) does not at all apply to medical malpractice cases like these, and (2) assuming arguendo a contrary determination that it does, there is no basis even under the statute for precluding communications as to any matter beyond the medical records and the care, treatment and medical condition of the patient. Accordingly, the petition in Castillo-Plaza is granted and those in Pierre and Giron are denied.

I.
The present controversy has its genesis in Coralluzzo v. Fass, 450 So.2d 858 (Fla. 1984) and Frantz v. Golebiewski, 407 So.2d 283 (Fla. 3d DCA 1981), in which the Supreme Court and this one respectively held that there was no legal impediment to "ex parte," but voluntary, conversations concerning any matter between a patient's treating doctors and those involved in the defense of his personal injury claim, including one for malpractice. In 1988, however, the legislature *200 added the emphasized language to section 455.241(2):
(2) Such [medical] records shall not be furnished to and the medical condition of a patient may not be discussed with any person other than the patient or his legal representative or other health care providers involved in the care or treatment of the patient, except upon written authorization of the patient. However, such records may be furnished without written authorization to any person, firm, or corporation which has procured or furnished such examination or treatment with the patient's consent or when compulsory physical examination is made pursuant to Rule 1.360, Florida Rules of Civil Procedure, in which case copies of the medical record shall be furnished to both the defendant and the plaintiff. Such records may be furnished in any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice to the patient or his legal representative by the party seeking such records. Except in a medical negligence action when a health care provider is or reasonably expects to be named as a defendant, information disclosed to a health care practitioner by a patient in the course of the care and treatment of such patient is confidential and may be disclosed only to other health care providers involved in the care or treatment of the patient or if permitted by written authorization from the patient or compelled by subpoena at a deposition, evidentiary hearing, or trial for which proper notice has been given.

Ch. 88-208, § 2, Laws of Fla. (§ 455.241(2), Fla. Stat. (1989)) (emphasis supplied). In several, apparently conflicting, decisions since, the district courts have considered the effect of this amendment on the previous rule. See Franklin v. Nationwide Mut. Fire Ins. Co., 566 So.2d 529 (Fla. 1st DCA 1990) (non-medical malpractice action), review dismissed, 574 So.2d 142 (Fla. 1990); Phillips v. Ficarra, 618 So.2d 312 (Fla. 4th DCA 1993) (same); Johnson v. Mount Sinai Medical Ctr., Inc., 615 So.2d 257 (Fla. 3d DCA 1993) (malpractice action); Kirkland v. Middleton, 639 So.2d 1002 (Fla. 5th DCA 1994) (same), review dismissed, 645 So.2d 453 (Fla. 1994); Richter v. Bagala, 647 So.2d 215 (Fla. 2d DCA 1994) (same), review granted sub nom. Acosta v. Richter, 650 So.2d 989 (Fla. 1995). We hold in this case, however, that the amendment itself negates the applicability of the statute in all medical malpractice cases. We base this conclusion  which is adopted here for the first time probably because it seems never to have been previously considered[3]  on the statute's clear provision that the privilege it establishes with respect to
information disclosed to a health care practitioner by a patient in the course of the care and treatment of such patient
applies

[e]xcept in a medical negligence action when a health care provider is or reasonably expects to be named as a defendant... .
§ 455.241(2), Fla. Stat. (1989) (emphasis supplied). Although the statute as a whole is far from a model of clarity, we find it impossible to read the plain language of the exception  which is the primary, if not the exclusive, appropriate source of its meaning, see 49 Fla.Jur.2d Statutes § 111 (1984)  in any other way. To repeat and rephrase, the privilege of confidentiality for information disclosed to "a health care practitioner"  like the treating physicians involved in these cases  does not apply in "a medical negligence action when a health care provider is or reasonably expects to be named as a defendant"  which describes the present actions perfectly. In this regard, it is well established, in accordance with the ordinary rules of grammar and rhetoric, that the word "a," as repeatedly and exclusively used in the operative portions of the statute, means "any." Izadi v. Machado (Gus) Ford, Inc., 550 So.2d 1135, 1138 n. 3 (Fla. 3d DCA 1989); State ex rel. Roberts v. Snyder, 149 Ohio St. 333, 78 N.E.2d 716 (1948); First Am. Nat'l Bank v. Olsen, 751 S.W.2d 417 (Tenn. 1987), appeal dismissed, 485 U.S. 1001, 108 S.Ct. 1460, 99 L.Ed.2d 691 (1988); see United *201 States Fidelity & Guar. Co. v. State Farm Mut. Auto. Ins. Co., 369 So.2d 410, 412, (Fla. 3d DCA 1979) ("an"). If, as the plaintiffs argue, the exception refers only to a case in which the treating physician was herself the active or potential defendant, the statute would read "except in a medical negligence action when the [or that] health care provider is or reasonably expects to be named as a defendant" or that "information disclosed to the [or that] health care practitioner ... is confidential." But it does not read that way and we are powerless judicially to amend the statute to provide that it does. See Holly v. Auld, 450 So.2d 217 (Fla. 1984).[4]
While resort to canons of statutory construction is probably unnecessary in light of what the statutory exception expressly provides, it is not irrelevant that the application of those rules leads to the same result:
1. Because the legislature is deemed to intend different meanings by the use of different words, Ocasio v. Bureau of Crimes Compensation Div. of Workers' Compensation, 408 So.2d 751 (Fla. 3d DCA 1982); 49 Fla.Jur.2d Statutes § 133 (1984), the fact that it referred to a health care provider who is a potential defendant and to a health care practitioner to whom information had been given must mean that they are not the same person and that the exception to confidentiality therefore is not restricted to a case in which only that doctor is being sued.
2. More importantly, the statute must be strictly interpreted and exceptions to it broadly construed both because it is in derogation of the common law as expressed in Coralluzzo and Frantz, which impose no restrictions on the availability of this information, see Thornber v. City of Fort Walton Beach, 568 So.2d 914 (Fla. 1990); Graham v. Edwards, 472 So.2d 803 (Fla. 3d DCA 1985), review denied, 482 So.2d 348 (1986), and because it erects a testimonial privilege which may "not [be] lightly created nor expansively construed, for [it is] in derogation of the search for truth." United States v. Nixon, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039, 1065 (1974), quoted in Marshall v. Anderson, 459 So.2d 384, 386 n. 3 (Fla. 3d DCA 1984).
3. Even more significant, it is apodictic that:
A law should be construed together with any other law relating to the same purpose *202 such that they are in harmony. Wakulla County v. Davis, 395 So.2d 540 (Fla. 1981); Garner v. Ward, 251 So.2d 252 (Fla. 1971). Courts should avoid a construction which places in conflict statutes which cover the same general field. Howarth v. City of Deland, 117 Fla. 692, 158 So. 294 (1934).
State Dep't of Revenue v. Stafford, 646 So.2d 803, 807 (Fla. 4th DCA 1994). In the malpractice field, the legislature has gone to great lengths to encourage the free flow and exchange of information during and even before the filing of suit in order to foster the disposition of these cases outside of court. See §§ 766.101-.316, Fla. Stat. (1993). There can be no doubt that this policy, particularly including the "informal discovery" provided by the statute, see § 766.106(7), Fla. Stat. (1993)  which was adopted almost simultaneously with the 1988 amendment to section 455.241, see Ch. 88-277, § 48, Laws of Fla.  would be severely subverted by a holding that the patient's treating doctor cannot even speak about his condition to potential malpractice defendants. Thus, it makes perfect sense for the legislature to provide, as we think it clearly did, that the privilege does not apply to those cases.

II.
Even applying the confidentiality provisions of section 455.241(2), we reach the same conclusion that the trial judge in Castillo-Plaza was wrong in precluding all ex parte discussions and that those in Pierre and Giron were at least not wrong in permitting those discussions on subjects not protected by the statute.
Two factors are preeminent in the consideration of the scope of the statutory privilege and the role, if any, that the trial courts should play in enforcing it. First, the treating physician, like any other witness or any other person, is free to speak with the defense or to decline to do so entirely as a voluntary matter. Second, he is precluded from doing so only insofar as that right is restricted by the statute. See Coralluzzo; Frantz. Particularly viewing them strictly as we are required, see Graham, 472 So.2d at 807; Marshall, 459 So.2d at 386-87, the terms of the statute confine the requirement of confidentiality to the "medical records" and the "medical condition" of the patient, including "information disclosed to [the doctor] ... in the course of [his] care and treatment." They do not restrict communication concerning anything else  the issues in the case, hypothetical questions concerning other patients and their treatment, or, indeed, anything beyond what the statute actually says. Moreover, there is no restriction on the manner in which conversations or discussions as to the nonforbidden topics may be conducted. Thus, while Johnson, 615 So.2d at 257, was correct so far as it went in upholding a trial court order which authorized  because that was the only relief requested by the defendant hospital in that case  a so-called "one-way" conversation in which defense counsel was to inform the doctor of his theory of the case, voluntary "two-way" conversations on unprivileged subjects are likewise permissible.
Because this is true, it is error to preclude, as do Richter, Kirkland, and perhaps Franklin, all such conversations and contacts by restricting counsel to formal discovery. And we thoroughly disagree with the indication in these cases that the presence of the patient's attorney is required "to protect against the disclosure of privileged information." Richter, 647 So.2d at 217. We do so both because it is quite impermissible for the judiciary to restrict any communication beyond that which is forbidden by the legislature, and, of equal or greater importance, because there is no reason whatever to believe that any witness, including  perhaps particularly  a physician, will violate his statutory obligations by revealing privileged material unless a court prevents him from doing so. Whether we treat a protective order like the one in Castillo-Plaza as a pure injunction against communication or as an order in aid of discovery, see Humble Oil & Ref. Co. v. Sun Oil Co., 175 F.2d 670 (5th Cir.1949) (error to enjoin defendants from interfering with making of survey under discovery rules); Humble Oil & Ref. Co. v. Harang, 262 F. Supp. 39 (E.D.La. 1966) (error to enjoin destruction of documents subject to production), it is settled law that no such restriction may be issued in the absence of a well grounded apprehension of injury to a *203 clearly established right. See Humble Oil, 175 F.2d at 670; Humble Oil, 262 F. Supp. at 39; Crawford v. Bradford, 23 Fla. 404, 2 So. 782 (1887); State ex rel. Reynolds County v. Riden, 621 S.W.2d 366 (Mo. App. 1981); Hudson v. School Dist. of Kansas City, 578 S.W.2d 301 (Mo. App. 1979); St. Louis 221 Club v. Melbourne Hotel Corp., 227 S.W.2d 764 (Mo. App. 1950); Eckhardt v. Bock, 159 S.W.2d 395 (Mo. App. 1942); 29 Fla.Jur.2d Injunctions § 12 (1981). In this case there has been no such showing. With no more than anecdotes to support the claim, the plaintiffs suggest that treating doctors  who are free to decline to speak to counsel altogether[5]  will, among other things, breach their duty to their patients, jeopardize their licenses, and expose themselves to personal liability, see Morris v. Consolidation Coal Co., 191 W. Va. 426, 446 S.E.2d 648 (1994), and cases collected at 16 Med.Liab.Rep. (MG-H) 299-301 (Dec. 1994), by violating the privilege  all supposedly out of feelings of camaraderie with their fellow physicians. We consider that such a claim amounts to no more than a baseless attack not only upon the good faith, but the good sense of the doctors in question. Moreover, because any such violation requires the connivance of counsel, the argument impugns our profession as well. We will not approve orders based on any such assumptions.
For the same reason  and although the issue is not technically before us in the absence of cross-petitions by the defendants in the Giron and Pierre cases  we think the provisions of these orders which specifically forbid a violation of the statutory privilege are, at least, unnecessary and likely unwise. It is inappropriate  on the theory that it "can't hurt"  to order others simply to obey the law in the absence of any indication that they would otherwise fail to do so. Humble Oil, 175 F.2d at 670; Humble Oil, 262 F. Supp. at 39; see Dodge Center v. Superior Court, 199 Cal. App.3d 332, 244 Cal. Rptr. 789 (1988) (presumed that every person will obey the law); Bentley v. State, 411 So.2d 1361 (Fla. 5th DCA 1982) (same; probationer), review denied, 419 So.2d 1195 (Fla. 1982); Ramsey v. Mercer, 142 Ga. App. 827, 237 S.E.2d 450 (1977) (same); accord Crawford, 23 Fla. at 404, 2 So. at 782 (no jurisdiction to enjoin collection of personal tax where no ground for apprehending enforcement of collection); Tubular Threading, Inc. v. Scandaliato, 443 So.2d 712 (La. App. 1983) (injunction against using, selling, distributing or disseminating documents relating to trade secrets would not lie absent present or compelling need or threatened misappropriation); Hudson, 578 S.W.2d at 301 (injunction to restrain future violations of sunshine law where no proof that school board contemplated meetings in violation of statute inappropriate).[6] In the absence of some extreme circumstances which do not exist in these cases, we think it inadvisable that there be any prospective court action at all in this field.[7]

III.
For these reasons, certiorari is granted and the order under review in case number 94-1428 is quashed; in case numbers 94-1493 and 94-1675, certiorari is denied.[8] We certify to the Supreme Court that this decision is in direct conflict with Kirkland v. *204 Middleton, 639 So.2d 1002 (Fla. 5th DCA 1994), review dismissed, 645 So.2d 453 (Fla. 1994), and Richter v. Bagala, 647 So.2d 215 (Fla. 2d DCA 1994), review granted sub nom. Acosta v. Richter, 650 So.2d 989 (Fla. 1995).
Certiorari granted in part, denied in part. Conflict certified.
HUBBART, NESBITT, COPE, LEVY, GERSTEN and GREEN, JJ., concur.
JORGENSON, Judge, dissenting.
I respectfully dissent and would hold that the 1988 amendments to section 455.241(2), Florida Statutes, do apply to non-defendant treating physicians in medical malpractice cases. Further, rather than relegate the definition of the limits of the privileges embodied by the amendments to the transgressions of the least vigilant of doctors and the most zealous of advocates in an off-the-record, behind-closed-doors setting, I would prohibit ex-parte contacts between non-defendant treating physicians and the defense attorneys. I would thus recede from Johnson v. Mount Sinai Medical Center, Inc., 615 So.2d 257 (Fla. 3d DCA 1993), as its approval of one-way interviews is inconsistent with the ex-parte communication bar.
In part I of the opinion, the court employs a broad battery of canons of statutory construction to reach its erroneous conclusion that the 1988 amendment to section 455.241(2), Florida Statutes, "negates the applicability of the statute in all medical malpractice cases." The court's tortured analysis carries the seeds of its own demise. The court relies on a portion of the statute which provides that confidentiality rules apply
except in a medical negligence action when a health care provider is or reasonably expects to be named as a defendant....
§ 455.241(2), Fla. Stat. (1993) (emphasis added). If the legislature had meant to merely exclude all medical malpractice actions from the confidentiality rules of the statute, one would expect the above quoted provision to end with the phrase "except in a medical malpractice action." The court suggests that the legislature intended to exclude all medical malpractice actions by specifying "medical negligence action[s] when a health care provider is or reasonably expects to be named as a defendant." The court's rule of construction that different words are intended to have different meanings would require us to give some meaning to the extra (underlined) words. This leads inescapably to the conclusion that there must be some class of medical negligence actions where no health care provider is or reasonably expects to be named as a defendant and that the legislature has taken pains to specifically leave these actions within the statute's ambit. It is difficult, if not impossible, to conceive of medical negligence actions where no health care provider is a defendant, and unfathomable that the legislature had contemplated such actions.
Rather, the senate judiciary committee staff report, see Franklin v. Nationwide Mut. Fire Ins. Co., 566 So.2d 529, 532 (Fla. 1st DCA 1990), confirms the more reasonable conclusion that the confidentiality rules apply to a health care provider or practitioner except when that health care provider or practitioner is or expects to be named in the action at issue. The essence of the flaw in the court's contrary stance is captured by Sir Edward Coke's "Mischief Rule":
When faced with an argument that the literal meaning of a statute is at variance with the legislative purpose, a court can follow no better guide than Sir Edward Coke's `Mischief Rule': `The Office of Judges is always to make such construction as to suppress the Mischief and advance the Remedy; and to suppress subtle Inventions and Evasions for Continuance of the Mischief.'
United States v. Second Nat'l Bank of North Miami, 502 F.2d 535, 541 (5th Cir.1974) (quoting Heydon's Case, 3 Co. 7a, 7b, Magdalon College Case, 11 Co. 66b, 73b). It is true that the legislature, by specifying "a" rather than "the" health care provider and in interchanging the words "provider" and "practitioner,"[1] failed to achieve precise formalism *205 in its drafting. However, the statute's regrettable lack of precision does not require us to work the dual mischief of reaching an unfathomable result and sanctioning trauma to the physician-patient relationship.
Thus the confidentiality amendments to the statute govern the orders at issue. Contrary to the court's analysis in part II, the effect of the amendments should be to bar ex-parte communication between defense counsel and non-defendant treating physicians. Prior to the amendments to section 455.241(2), Florida Statutes (1989), the Florida Supreme Court in Coralluzzo v. Fass, 450 So.2d 858, 859 (Fla. 1984), considered the question:
Does a court have the authority to prevent a treating physician from extrajudicially disclosing information obtained from his patient and information concerning the treatment of his patient where the patient has not consented to such disclosure?
The Court answered this question in the negative noting that
Petitioner urges this Court to exercise its jurisdiction to do equity between the parties. We can find no reason in law or in equity to disapprove the decision of the district court. No law, statutory or common, prohibits  even by implication  respondents' actions. We note that no evidentiary rule of physician/patient confidentiality exists in Florida and that, although several statutes preserve confidentiality in certain medical records, petitioner has failed to identify a specific statute respondents have infringed. Likewise, no rule of procedure or rule of professional responsibility proscribes respondents' interview with Dr. Magnacca.
Id. (emphasis added). The Court's rationale in Coralluzzo has been abrogated by the legislature's subsequent amendments to section 455.241(2), now mandating the opposite answer to the above-quoted question considered in Coralluzzo. The statute now expressly prohibits a physician's extrajudicial disclosure of information obtained from a patient and information concerning the treatment of that patient. This conclusion does not, however, end the analysis.
The Castillo-Plaza order goes beyond merely prohibiting discussion of the expressly enumerated areas in the statute and prohibits all discussions, while the Pierre and Giron orders merely direct the parties to follow the prescripts of the statute. Although it is clear that the legislature intended the confidentiality amendments to impose privileges in each of these cases, the legislature did not indicate the effect the existence of these confidentiality privileges should have on discovery. The court would limit the amendments to a mere statement of the confidentiality obligations of physicians, without a means to ensure their observance. However, it is my view that the 1988 amendments fill the void in statutory authority that prevented the Coralluzzo Court from doing equity between the parties and prohibiting ex-parte physician contacts. Under the 1988 amendments, communications should be now conducted within the safeguards of the civil discovery procedures, and ex-parte communications should be prohibited to give meaning to the statute's broad prohibition of the discussion of the medical condition of, furnishing medical records of, and disclosing information provided by the patient.
The court notes that the likelihood that the treating physicians in these cases would agree to talk to the defendants ex parte is "so infinitesimal as a practical matter that these petitions might well be dismissed as moot." I agree that the number of physicians who would engage in ex-parte interviews is likely small. But it is precisely this handful of practitioners  whose cavalier disregard of their duty to their patients permits them to provide affirmative assistance to the patient's antagonist in litigation  who justify an ex-parte communication bar. The court's decision would allow defense counsel to avoid depositions for only these few physicians who would accede to an ex-parte interview  the vast majority of the physicians would still require a subpoena for deposition or waiver by the patient. The inconvenience of instead having to set depositions for the few errant physicians is infinitesimal in relation to the *206 potential for abuse, intentional or otherwise, by the court's allowing free, unmonitored access to them by defense counsel[2] and the resulting uncertainty of the bounds of the confidentiality privileges.
Section 455.241(2) now provides that absent waiver by the patient, medical records shall not be furnished except in response to a subpoena; information disclosed to a nondefendant health care practitioner may only be disclosed at a deposition, hearing, or trial; and the medical condition of the patient may not be discussed. The precise reaches of the prohibition against discussing the medical condition of the patient are not defined by the statute and not at issue in this case.[3] The court relegates the definition of the limits of this privilege to the doctors and defense counsel. The better interpretation is to bar the ex-parte communication altogether  the logical effect to be ascribed to the change in the statute, with strong public policy support in, among other things, the Hippocratic Oath, the American Medical Association's Principles of Medical Ethics, and the Current Opinions of the Judicial Council of the AMA.[4]
The 1988 amendments to section 455.241(2) follow my longstanding, yet unavailing, view that defense counsel should be allowed to confer with non-party physicians who have treated the plaintiff "only with the knowledge and consent of the plaintiff and counsel. Not only is that the fair way, but it avoids any *207 implication of collusion or conspiracy which may appear from clandestine consultations." Coralluzzo v. Fass, 435 So.2d 262, 264-65 (Fla. 3d DCA 1983) (Jorgenson, J., dissenting) (citation omitted, emphasis in original), aff'd, 450 So.2d 858 (Fla. 1984). Allowing such ex-parte communications "necessarily sanctions trauma to the physician-patient relationship." Id. at 264. The court today reopens the wound healed by the legislature and reintroduces the infection of patient-physician distrust.
BASKIN and GODERICH, JJ., concur.
GODERICH, Judge (dissenting).
I respectfully dissent, and as I disagree with the arguments raised in both Section I and II of the majority opinion I would deny certiorari in Castillo-Plaza v. Green and grant certiorari in Pierre v. North Shore Medical Center and Giron v. Noy. Further, I would recede from Johnson v. Mount Sinai Medical Center, Inc., 615 So.2d 257 (Fla. 3d DCA 1993), in so far as it authorizes a "one-way interview" in which "the physicians essentially remain silent and the defense counsel do all the talking." Johnson, 615 So.2d at 258. As stated in Richter v. Bagala, 647 So.2d 215, 217 (Fla. 2d DCA 1994), review granted sub nom. Acosta v. Richter, 650 So.2d 989 (Fla. 1995), I "see no reason to require treating physicians to listen and not respond to an attorney, who is not their attorney, about their professional responsibilities." Instead, I would follow Kirkland v. Middleton, 639 So.2d 1002 (Fla. 5th DCA), review dismissed, 645 So.2d 453 (Fla. 1994), and Franklin v. Nationwide Mutual Fire Insurance Co., 566 So.2d 529 (Fla. 1st DCA), review dismissed, 574 So.2d 142 (Fla. 1990), which prohibits ex parte interviews between a defense counsel and the plaintiffs' treating physicians.
BASKIN, J., concurs.
NOTES
[1] The order reads as follows:

THIS CAUSE, having come on to be heard on Thursday, May 12, 1994 pursuant to Plaintiff's Response to Defendant's Notice of Intent to Interview Witnesses; and the Court having reviewed the court file, having heard argument of counsel and being otherwise duly advised in the premises, it is
ORDERED and ADJUDGED, as follows:
1. Defendant shall not communicate with any treating healthcare provider except through the use of deposition as provided by the Florida Rules of Civil Procedure.
[2] The order in Pierre states:

THIS CAUSE, having come before this Court on Thursday, May 19, 1994, on the Plaintiff's Motion to Preclude Conference with Plaintiff's Treating Physicians and Health Care Providers and Defendants' Motion to Execute Medical Records Releases, and it having been represented to the Court that:
1. Plaintiff seeks an Order pursuant to Florida Statute § 455.241 prohibiting all contact and communications between treating physicians of the Plaintiff and defense counsel.
2. Defense counsel agrees that such physicians may not provide records or advise the Defendants' counsel of the medical condition of the Plaintiff.
3. Defense counsel seeks authority to communicate to such physicians matters such as the issues in this cause.
And the Court being otherwise fully advised in the premises, it is hereby
ORDERED AND ADJUDGED:
1. Pursuant to Florida Statute § 455.241, treating physicians, who are not potential defendants in this case, shall not discuss the medical condition of LYDIA D. PIERRE with defense counsel in the absence of an authorization or Subpoena for Deposition. Similarly, any information disclosed to the physician may not be disclosed to defense counsel in the absence of a Release or Subpoena.
2. However, defense counsel may communicate with such physicians to advise them about the issues in this case or any other matter not otherwise prohibited by law.
The order in Giron provides:
THIS CAUSE, having come on to be heard on Thursday, June 23, 1994, pursuant to the Plaintiff's Objection to Defendant Raul Ravelo, M.D.'s Notice of Intent to Interview Witnesses Pursuant to Constitutional Right and/or Waiver of Statutory Privilege, and the Court having reviewed the court file, having heard argument of counsel and being otherwise duly advised in the premises, it is,
ORDERED AND ADJUDGED, as follows:
1. The Plaintiff's objections be and the same are hereby denied; and
2. Pursuant to Florida Statutes § 455.241, treating physicians, who are not potential defendants in this case, shall not discuss the medical condition of Margarita Giron with defense counsel in the absence of an authorization or Subpoena for deposition. Similarly, any information disclosed to the physician by Margarita Giron or her representative, may not be disclosed to defense counsel in the absence of a Release or Subpoena.
3. However, defense counsel may communicate with such treating physicians to advise them about the issues in this case or any other matter not otherwise prohibited by law.
4. In advance of any discussions with said treating physicians, defense counsel shall show this Order to said physician together with a copy of the case captioned Johnson v. Mount Sinai Medical Center of Miami, 615 So.2d 257 (Fla.App. 3 Dist. 1993) which is attached hereto and incorporated herein.
[3] In Johnson, 615 So.2d at 257, for example, this court simply assumed the applicability of the privilege in that malpractice case without discussion or decision.
[4] That judicial amendment is necessary to reach the contrary result is demonstrated most forcefully by the very cases which have done so. They apparently stem initially from Franklin, which, because it was not a malpractice case, did not involve the present issue at all. Nevertheless, the Franklin court twice referred to the present issue; first correctly, but, second, quite incorrectly:

This statutory language is abundantly clear on its face. It provides for waiver of confidentiality of covered medical information in only three circumstances:
1) in a medical negligence action, when a health care provider is or reasonably expects to be named as a defendant.
* * * * * *
In other words, in all cases other than those where the health care provider is a defendant... .
Franklin, 566 So.2d at 532 (emphasis supplied). It is apparent that the unaccountable substitution of "the" for "a," as it appears in the statute, sub silentio effected a total reversal of the meaning of that phrase.
Much the same thing occurred in the Kirkland case, which was a malpractice case in which the present issue was therefore actually presented for the first time. Apparently without recognizing that Franklin was not a malpractice case, the fifth district nevertheless purported to follow that decision. Indeed, it virtually quoted Franklin verbatim on the point  but with one significant but unacknowledged departure. The court said:
We agree with our sister court in Franklin v. Nationwide Mutual Fire Insurance Co., 566 So.2d 529 (Fla. 1st DCA), rev. dismissed, 574 So.2d 142 (Fla. 1990), that this statute waives confidentiality for the medical condition of a patient or information furnished by the patient to a health care provider only in the following situations:
1) when a health care provider is or reasonably expects to be named as a defendant in a medical malpractice action (for that health care providers' [sic] records and information)... .
Kirkland, 639 So.2d at 1004 (emphasis supplied). We do not claim to understand the source of the parenthetical expression which is not in the statute or in Franklin and which, again without discussion, resolves the present issue to the direct contrary of what the statute provides. Finally, in Richter, the second district compounded the error by merely copying the Kirkland language without comment or concern. 647 So.2d at 217. We find no difficulty in disagreeing with statements of the law which, like those in Kirkland and Richter, are justified only by iteration and repetition.
[5] Of course, plaintiff's counsel is also free to inform the treating physician of this fact, as well as of the parameters of the statutory privilege. In fact, the likelihood that they have not done so or that the treating physicians in these very cases would now agree to talk to the defendants under any circumstances is so infinitesimal as a practical matter that these petitions might well be dismissed as moot.
[6] Moreover, the very existence of such an order may counter-productively imply to a physician to whom it is shown that the court is somehow authorizing or approving an ex parte discussion which the doctor is, in fact, entirely free to decline.
[7] Ample remedies already exist if an actual violation of the privilege takes place. Morris, 191 W. Va. at 426, 446 S.E.2d at 648; Steinberg v. Jensen, 186 Wis.2d 237, 519 N.W.2d 753 (1994) (new trial ordered upon discovery of defense violation of privilege), review granted, 525 N.W.2d 732 (Wis. 1994); see § 458.331, Fla. Stat. (1993).
[8] In accordance with the views expressed in both parts of this opinion, however, the orders in these cases should be vacated after remand.
[1] The majority's argument that the drafters could not have meant the "provider" to be the same person as the "practitioner" carries little weight. Further on in the same sentence of the statute where these words are interchanged, the drafters revert to the word provider when referring to others involved in the treatment of the patient with whom the practitioner may speak.
[2] The majority dismisses this concern as arising from anecdotal evidence. Not only is there record evidence in these cases of the pressure to overreach inherent in our adversary system, but this phenomenon has been recognized and documented by decisions in other jurisdictions throughout the country. In this court's decision in Coralluzzo v. Fass, 435 So.2d 262 (Fla. 3d DCA 1983), the dissent surveyed some of the other jurisdictional support for this proposition. Id. (Pearson, Jorgenson, JJ., dissenting). An updated survey of jurisdictions barring ex-parte communications can be found in, e.g., Horner v. Rowan Cos., 153 F.R.D. 597 (S.D.Tex. 1994).
[3] Nor is there an issue in this case whether the ex-parte bar conflicts with the presuit screening scheme of chapter 766. The orders at issue here have arisen in already-filed lawsuits.
[4] In prohibiting similar ex-parte conferences, the court in Petrillo v. Syntex Lab., Inc., 148 Ill. App.3d 581, 102 Ill.Dec. 172, 177-78, 499 N.E.2d 952, 957-58 (1986), appeal denied, 113 Ill.2d 584, 106 Ill.Dec. 55, 505 N.E.2d 361 (1987), set forth the public policy dictates of medical ethics:

The code of ethics for the medical profession is comprised of three separate "prongs": (1) the Hippocratic Oath; (2) The American Medical Association's (AMA) Principles of Medical Ethics; and (3) The Current Opinions of the Judicial Council of the AMA (1984 ed.). These three "prongs" underscore the highly confidential nature of the physician-patient relationship and, perhaps more importantly, affirmatively advertise to the public that a patient can properly expect his physician to protect those medical confidences which are disclosed during the physician-patient relationship.
....
The [Hippocratic] oath [provides]:
Whatever, in connection with my professional practice or not in connection with it, I see or hear, in the life of men, which ought not to be spoken abroad, I will not divulge, as reckoning that all such should be kept secret.
....
The AMA's Principles of Medical Ethics ... were adopted in 1977 and are eight in number. Principle II [provides] in relevant part: "A physician shall deal honestly with his patients and colleagues... ." Principle IV [provides]: "A physician shall respect the rights of patients, of colleagues, and of other health professionals, and shall safeguard patient confidences within the constraints of the law."
....
[T]he Current Opinions of the Judicial Council of the AMA ... reflect the AMA's position on how a physician should act in particular circumstances. Section 5.05 of the Current Opinions, for example, [provides]:
The information disclosed to a physician during the course of the relationship between physician and patient is confidential to the greatest possible degree... . The physician should not reveal confidential communications or information without the express consent of the patient, unless required to do so by law.
....
Section 5.06 deals specifically with the attorney-physician relationship and again reiterates the requirement of patient consent: "The patient's history, diagnosis, treatment, and prognosis may be discussed with the patient's lawyer with the consent of the patient or the patient's lawful representative."
....
Moreover, Sections 5.07 and 5.08 [provide]:
History, diagnosis, prognosis, and the like acquired during the physician-patient relationship may be disclosed to an insurance company representative only if the patient or his lawful representative has consented to the disclosure.