671 So.2d 149 (1996)
Rudolph ACOSTA, M.D., Petitioner,
v.
Nancy RICHTER, et vir, Respondents.
No. 84413.
Supreme Court of Florida.
January 18, 1996.
Rehearing Denied April 4, 1996.
*150 Philip D. Parrish of Stephens, Lynn, Klein & McNicholas, P.A., Miami, for Petitioner.
Kenneth S. Spiegelman of Grover, Weinstein, Stauber & Friedman, P.A., Miami Beach, for Respondents.
Joel S. Perwin of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, Amicus Curiae for The Academy of Florida Trial Lawyers.
Raoul G. Cantero, III of Adorno & Zeder, P.A., Miami, Amicus Curiae for Florida Medical Association.
ANSTEAD, Justice.
We have for review Richter v. Bagala, 647 So.2d 215 (Fla. 2d DCA 1994), which expressly and directly conflicts with the opinion in Johnson v. Mount Sinai Medical Center, Inc., 615 So.2d 257 (Fla. 3d DCA 1993).[1] We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. For the reasons expressed below, we approve Richter, disapprove Johnson, and hold that section 455.241(2), Florida Statutes (1993), provides for a broad physician-patient privilege of confidentiality for a patient's medical information and a limited exception to the privilege for disclosure by a defendant physician in a medical negligence action in order for the physician to defend herself.

FACTS
Nancy Richter and Gary Richter filed a medical negligence action against Frank J. Bagala, M.D., and Rudolph Acosta, M.D. During pre-trial proceedings, Dr. Acosta sought an order approving ex parte conferences between his counsel and the plaintiffs' treating physicians. Dr. Bagala joined in the request. The trial court granted the request and authorized defense counsel to have ex parte discussions with the Richters' treating physicians.[2] The Richters sought review by certiorari, and the Second District Court of Appeal quashed the trial court order, Richter, 647 So.2d at 217, and acknowledged conflict with the Third District decision in Johnson.

LAW and ANALYSIS
At issue is whether defense counsel in a medical negligence action is barred from having an ex parte conference with a claimant's current treating physicians under the provisions of section 455.241(2), Florida Statutes (1993).

Physician-Patient Privilege
The present controversy has its genesis in Coralluzzo v. Fass, 450 So.2d 858 (Fla.1984), where, in a medical malpractice action, this Court held there was no common law or statutory privilege of confidentiality as to physician-patient communications in Florida and, hence, there was no legal impediment to ex parte conversations between a patient's treating doctors and the defendants or their representatives. Id. at 859; see also Avis Rent-A-Car System, Inc. v. Smith, 548 So.2d 1193, 1194 (Fla. 4th DCA 1989) ("[T]he treating doctor is free to disclose information concerning treatment of the patient to opposing counsel.")
At the time of our decision in Coralluzzo, there was a limited statutory privilege of confidentiality for certain medical records provided by section 455.241(2), Florida Statutes (1983), but no general statutory privilege for the physician-patient relationship. We acknowledged the existence of a limited statutory privilege as to records in Coralluzzo. In 1988, however, the legislature amended section 455.241(2), ch. 88-208, § 2, Laws *151 of Fla., to provide for a physician-patient privilege of confidentiality by adding the following emphasized language:
Except as otherwise provided in s. 440.13(2), such [medical] records may not be furnished to, and the medical condition of a patient may not be discussed with, any person other than the patient or the patient's legal representative or other health care providers involved in the care and treatment of the patient, except upon written authorization of the patient. However, such records may be furnished without written authorization to any person, firm, or corporation which has procured or furnished such examination or treatment with the patient's consent or when compulsory physical examination is made pursuant to Rule 1.360, Florida Rules of Civil Procedure, in which case copies of the medical record shall be furnished to both the defendant and the plaintiff. Such records may be furnished in any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice to the patient or the patient's legal representative by the party seeking such records. Except in a medical negligence action when a health care provider is or reasonably expects to be named as a defendant, information disclosed to a health care practitioner by a patient in the course of the care and treatment of such patient is confidential and may be disclosed only to other health care providers involved in the care or treatment of the patient, or if permitted by written authorization from the patient or compelled by subpoena at a deposition, evidentiary hearing, or trial for which proper notice has been given.

§ 455.241(2), Fla.Stat. (1993) (emphasis added).
Since the amendment, Florida courts have split as to the extent of the physician-patient privilege of confidentiality created by the statute and the scope of the exception to the privilege in medical negligence actions. Some courts have limited the medical negligence exception to permit only a defendant physician to be excepted from the restriction of the privilege (i.e., a defendant physician may discuss her knowledge of the claimant-patient with others in order to assist in the physician's defense). Other decisions have held the medical negligence exception does away with the patient-physician privilege completely in medical negligence actions, thereby permitting any physicians who have seen or treated the claimant to freely disclose the claimant's personal medical information.
The first Florida appellate decision to interpret newly amended section 455.241(2) was Franklin v. Nationwide Mutual Fire Insurance Co., 566 So.2d 529 (Fla. 1st DCA), review dismissed, 574 So.2d 142 (Fla.1990). In Franklin, the trial court ordered the injured plaintiff to execute a medical authorization permitting ex parte discussions between the defendant's counsel and the plaintiff's physicians. Plaintiffs argued on appeal that the action of the court directly violated the physician-patient privilege of confidentiality set out in section 455.241. The district court agreed and, in a unanimous opinion authored by Judge Zehmer, explained:
This statutory language is abundantly clear on its face. It provides for waiver of confidentiality of covered medical information in only three circumstances:
1) in a medical negligence action, when a health care provider is or reasonably expects to be named as a defendant,
2) by written authorization of the patient, or
3) when compelled by subpoena at a deposition, evidentiary hearing, or trial for which proper notice has been given.
In other words, in all cases other than those where the health care provider is a defendant, unless the plaintiff voluntarily provides a written authorization to the defendant, the defendant's discovery of the privileged matter can be compelled only through the subpoena power of the court with proper notice in accordance with the discovery provisions of the rules of civil procedure. The reference to "proper notice" is unquestionably included to preclude the type of unilateral, ex parte interrogation *152 of a physician permitted by the order under review and envisioned by respondent's counsel.
Id. at 532. In addition to its reliance on the plain language of the statute, the First District noted the existence of evidence of legislative intent consistent with this view:
This construction and application of the statute is consistent with the legislative intent reflected in the Senate judiciary committee staff report:
B. Effect of Proposed Changes:
. . . .
The bill amends s. 455.241, F.S., to specify that, in addition to medical records, the medical condition of a patient may not be disclosed to any person other than the patient, the patient's legal representative, or other health care providers involved in the treatment of the patient, except upon written consent of the patient. Further, the bill specifies that information disclosed to a health care practitioner by a patient is confidential and may be disclosed only to other health care providers involved in the care of the patient or by written authorization of the patient or by subpoena. In addition, this information may be disclosed by a health care provider to his attorney if the provider expects to be named as a defendant in a negligence case.
Id. (citing Fla.S.Comm. on Judiciary, CS for SB 1076 (1988) Staff Analysis 1 (May 19, 1988)).
Several other district courts have issued opinions consistent with the holding in Franklin. The Second District, in a wrongful death action against a nursing home, cited Franklin with approval and expressed its agreement as to Franklin's interpretation of the legislature's intent as to the medical negligence exception to the rule of confidentiality:
The only reasonable construction of this provision is that the legislature intended to impose no impediment to health care practitioners' disclosure of patient data in their own possession once litigation is imminent, at least to the extent necessary to defend against such litigation.
Manor Care of Dunedin, Inc. v. Keiser, 611 So.2d 1305, 1307 (Fla. 2d DCA 1992), quoted in Alachua General Hospital, Inc. v. Stewart, 649 So.2d 357, 358 (Fla. 1st DCA 1995).
In West v. Branham, 576 So.2d 381, 383 (Fla. 4th DCA), review dismissed, 583 So.2d 1034 (Fla.1991), the Fourth District agreed with the First District that the primary purpose of the statute was to provide a privilege of confidentiality to the physician-patient relationship. Although the specific issue before it involved access to physicians performing court-ordered independent medical examinations, the court's opinion discussed section 455.241 and stated:
Patently, the purpose of the statute is to preserve a patient's right to confidentiality with respect to information disclosed to a health care provider in the course of the care and treatment of a patient and to limit the conditions under which such information may be disclosed to others. This includes closing the door to the previous practice of many defense attorneys of meeting privately or otherwise communicating ex parte with the plaintiff's treating physicians.
Id.; see also Phillips v. Ficarra, 618 So.2d 312, 314 (Fla. 4th DCA 1993) (holding that defense counsel's ex parte communications with plaintiff's treating physician would violate section 455.241(2), "which prohibits communications between a doctor and a third party regarding the medical condition of the doctor's patient unless compelled by a subpoena for deposition, evidentiary hearing, or at trial").
The Fifth District, in Kirkland v. Middleton, 639 So.2d 1002, 1003 (Fla. 5th DCA), review dismissed, 645 So.2d 453 (Fla.1994), expressed its agreement with Franklin in holding that medical negligence defendants are not permitted to conduct ex parte interviews with a claimant's physicians:
We agree with our sister court in Franklin v. Nationwide Mutual Fire Insurance Co., 566 So.2d 529 (Fla. 1st DCA), rev. dismissed, 574 So.2d 142 (Fla.1990), that this statute waives confidentiality for the medical condition of a patient or information furnished by the patient to a health *153 care provider only in the following situations:
1) when a health care provider is or reasonably expects to be named as a defendant in a medical malpractice action (for that health care providers' records and information) or
2) when the patient gives written authorization or
3) when compelled by subpoena at a deposition, evidentiary hearing or trial for which proper notice was given....
. . . .
... Were unsupervised ex parte interviews allowed, medical malpractice plaintiffs could not object and act to protect against inadvertent disclosure of privileged information, nor could they effectively prove that improper disclosure actually took place.
Id. at 1004 (footnote omitted).
On the other hand, and contrary to the opinions discussed above, the Third District has held that section 455.241(2) does not bar ex parte contacts between medical negligence defendants and a claimant's treating physicians. In Johnson v. Mount Sinai Medical Center, Inc., 615 So.2d 257 (Fla. 3d DCA 1993), the plaintiffs sought review of a trial court order authorizing limited contact with the treating physicians by defense counsel. Id. at 257. In holding that the limited contact did not violate section 455.241(2), Florida Statutes (1991), the Third District stated:
[T]he order under review (1) expressly prohibits the infant's treating physicians from discussing the medical condition of the infant with defense counsel at the subject interview in accord with the above statute, and (2) solely authorizes defense counsel (a) to advise the physicians about the issues of the case, and (b) to advise the physicians of any matter not otherwise prohibited by law, which is clearly not proscribed by the above statute. In essence, the order authorizes a one-way interview between defense counsel and the subject physicians in which the physicians essentially remain silent and the defense counsel do all the talking. Plainly, such an interview is not prohibited in any way by Section 455.241(2), Florida Statutes (1991).
Id. at 258 (emphasis added). In contrast to the narrow holding of Johnson, which implicitly recognized the application of the physician-patient privilege to medical negligence cases, the Third District subsequently decided that section 455.241(2) provided an express exception to the privilege in medical negligence cases. In Castillo-Plaza v. Green, 655 So.2d 197 (Fla. 3d DCA 1995), the court, in a seven to three en banc decision, held that: (1) the privilege established by section 455.241(2) does not apply to medical malpractice cases; and, alternatively, (2) assuming arguendo that it does, there is no basis under the statute for precluding communications as to any matter beyond the medical records and the care, treatment and medical condition of the patient. Id. at 199.

Section 455.241(2) as Amended in 1988
This is the first case in which we have been asked to construe the provisions of section 455.241(2) since the 1988 amendments.[3] Because we are called upon to construe a statute, we invoke the polestar of statutory construction: plain meaning of the statute at issue. See Shelby Mut. Ins. Co. v. Smith, 556 So.2d 393, 395 (Fla.1990) ("The plain meaning of statutory language is the first consideration of statutory construction.") Such a rule requires the straightforward consideration of each relevant sentence of section 455.241(2) since a "statute should be interpreted to give effect to every clause in it, and to accord meaning and harmony to *154 all of its parts." State ex rel. City of Casselberry v. Mager, 356 So.2d 267, 269 n. 5 (Fla.1978). Likewise, "statutory phrases are not to be read in isolation, but rather within the context of the entire section." Jackson v. State, 634 So.2d 1103, 1105 (Fla. 4th DCA 1994); see also Smith v. United States, 508 U.S. 223, 233, 113 S.Ct. 2050, 2056, 124 L.Ed.2d 138 (1993) ("Just as a single word cannot be read in isolation, nor can a single provision of a statute.")
The first sentence of section 455.241(2) states:
Except as otherwise provided in s. 440.13(2), such records[[4]] may not be furnished to, and the medical condition of a patient may not be discussed with, any person other than the patient or the patient's legal representative or other health care providers involved in the care and treatment of the patient, except upon written authorization of the patient.
This opening sentence creates a broad and express privilege of confidentiality as to the medical records and the medical condition of a patient.[5] The statute states in simple, direct language that medical records "may not be furnished" and the medical condition of a patient "may not be discussed" except upon written authorization of the patient. The obvious purpose of this first sentence is to prohibit disclosure of patient medical records and the patient's medical condition to anyone except the patient, the patient's legal representative, or other health care providers who are "involved in the care or treatment of the patient," except upon a patient's written authorization.[6] Given the legal history of the physician-patient privilege in Florida, and our decision in Coralluzzo, we conclude that the primary purpose of the 1988 amendment was to create a physician-patient privilege where none existed before, and to provide an explicit but limited scheme for the disclosure of personal medical information.[7] *155 We also believe the remaining provisions of the statute should be considered in light of this purpose.

Medical Records
The next two sentences of section 455.241 existed prior to the 1988 revision, and they simply carve out three exceptions or ways in which patient medical records may properly be disclosed:
However, such records may be furnished without written authorization to [1] any person, firm, or corporation which has procured or furnished such examination or treatment with the patient's consent or [2] when compulsory physical examination is made pursuant to Rule 1.360, Florida Rules of Civil Procedure, in which case copies of the medical record shall be furnished to both the defendant and the plaintiff. [3] Such records may be furnished in any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice to the patient or the patient's legal representative by the party seeking such records.
These "exceptions" are straightforward and require no further explanation here.

Medical Negligence Exception
The next sentence of subsection (2) is the one relevant to our present inquiry:

Except in a medical negligence action when a health care provider is or reasonably expects to be named as a defendant, information disclosed to a health care practitioner by a patient in the course of the care and treatment of such patient is confidential and may be disclosed [1] only to other health care providers involved in the care or treatment of the patient, or [2] if permitted by written authorization from the patient or [3] compelled by subpoena at a deposition, evidentiary hearing, or trial for which proper notice has been given.
(Emphasis added.) Some of the proper means of disclosure set out earlier in the statute, and already discussed above, are here repeated and specifically applied to patient information. These provisions allow disclosure of patient information: (1) to other health care providers involved in the care or treatment of the patient; (2) by written authorization of the patient; and (3) when compelled by subpoena at a deposition, evidentiary hearing, or trial for which proper notice has been given. The first two of these authorized means of disclosure are also contained in the first sentence of the statute. These provisions for disclosure require little explanation beyond their own terms except to note that they are part of an explicit scheme set out in the statute to strictly control the dissemination of a Florida patient's medical information.
The exception to the rule of confidentiality at issue is the initial provision in this sentence allowing for disclosure "in a medical negligence action when a health care provider is or reasonably expects to be named as a defendant." We reject the suggested interpretation that this language was intended to create a broad exception doing away with the physician-patient privilege in all medical negligence cases. That is simply not what the exception states. Rather, we agree with Judge Jorgensen's dissent in Castillo-Plaza:
If the legislature had meant to merely exclude all medical malpractice actions from the confidentiality rules of the statute, one would expect the above quoted provision to end with the phrase "except in a medical malpractice action." The court suggests that the legislature intended to exclude all medical malpractice actions by specifying "medical negligence action[s] when a health care provider is or reasonably expects to be named as a defendant." The court's rule of construction that different words are intended to have different meanings would require us to give some meaning to the extra (underlined) words. This leads inescapably to the conclusion that there must be some class of medical negligence actions where no health care provider is or reasonably expects to be named as a defendant and that the legislature has taken pains to specifically leave these actions within the statute's ambit. It is difficult, if not impossible, to conceive of medical negligence actions where no health care provider is a defendant, and unfathomable *156 that the legislature had contemplated such actions.
655 So.2d at 204. Considering our conclusion that the major purpose of section 455.241(2) is to restrict a physician from disclosing patient information, we believe this "medical negligence" exception permits disclosure of patient information only by a physician who "is or reasonably expects to be named as a defendant" in a medical negligence action. We do not believe that the legislature, having created a broad physician-patient privilege earlier in the statute and a strict scheme for limited disclosure, would use such awkward language if its intent was simply to do away with the privilege entirely in medical negligence cases.[8]
On the other hand, common sense dictates that a defendant health care provider should be able to discuss patient information to defend herself in a medical negligence action brought by the patient. Cf. § 491.0147(1), Fla.Stat. (1993) (providing for waiver of confidentiality for a mental health counselor "when the person licensed or certified under this chapter is a party defendant to a civil, criminal, or disciplinary action arising from a complaint filed by the patient or client, in which case the waiver shall be limited to that action"); see also R. Regulating Fla.Bar 4-1.6(c)(2), (4) (attorney may violate attorney-client privilege to extent lawyer reasonably believes necessary to defend him- or herself in legal malpractice action). Such an exception does no harm to the broad privilege of confidentiality created by the statute. But such an exception, narrow in scope and patently logical and consistent with the other provisions of the statute, contrasts sharply with the idea that the legislature intended to do away with the privilege entirely in medical negligence cases.
Coincidentally, as earlier observed by the First District, this common sense interpretation is also consistent with the available evidence of the legislature's intent. See Heredia v. Allstate Ins. Co., 358 So.2d 1353, 1354-55 (Fla.1978) ("In matters requiring statutory construction, courts always seek to effectuate legislative intent.") In its staff analysis, the legislature indicated that "information may be disclosed by a health care provider to his attorney if the provider expects to be named as a defendant in a negligence case." Fla.S.Comm. on Judiciary, CS for SB 1076 (1988) Staff Analysis 1 (May 19, 1988).
We further reject the suggestion that the statute, with its limitations on disclosure, is somehow violative of a defendant physician's First Amendment rights to free speech. We find no First Amendment flaw in the legislature's particular scheme for balancing a patient's individual privacy with society's reasonable need for limited disclosure of medical information. We have already indicated that a defendant-physician is free, under the statute, to discuss his knowledge of the patient in order to properly defend himself. The legislature itself has provided this safeguard, as well as providing other means for disclosure.
Similarly, we find no conflict between the statute and this Court's rulemaking powers or existing rules of procedure. As noted above, we believe the legislature has considerable latitude in providing Florida citizens with a high degree of privacy in their medical information. In addition, the statute provides for a variety of ways in which medical information may be properly disclosed, all of which we find consistent with our own rules of discovery and trial procedure.
Finally, we reject the contention that ex parte conferences with treating physicians may be approved so long as the physicians are not required to say anything. We believe it is pure sophistry to suggest that the purpose and spirit of the statute would not be violated by such conferences.

CONCLUSION
We hold that section 455.241(2), Florida Statutes (1993), creates a physician-patient privilege of confidentiality for the patient's personal medical information, and a limited exception to the privilege for a defendant-health care provider that reasonably expects to be named as a defendant in a *157 medical negligence action. Accordingly, we approve the decision below in Richter v. Bagala, 647 So.2d 215 (Fla. 2d DCA 1994). We disapprove of Johnson v. Mt. Sinai Medical Center, Inc., 615 So.2d 257 (Fla. 3d DCA 1993), and Castillo-Plaza v. Green, 655 So.2d 197 (Fla. 3d DCA 1995).
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING and WELLS, JJ., concur.
NOTES
[1] Since we accepted jurisdiction in this case, the Third District has rendered another decision which conflicts with the case sub judice. See Castillo-Plaza v. Green, 655 So.2d 197 (Fla. 3d DCA 1995), review dismissed, 661 So.2d 824 (Fla. 1995), and review granted sub nom. Pierre v. North Shore Medical Ctr., Inc., 663 So.2d 631 (Fla. 1995).
[2] The order, however, prohibited the attorneys from discussing the specific medical condition of the patient with the treating physicians.
[3] In Rojas v. Ryder Truck Rental, Inc., 641 So.2d 855 (Fla. 1994), we held that a trial court has the authority to require parties injured in an automobile accident to sign a limited medical authorization form to allow the opposing party to obtain from an out-of-state source "the same information available by subpoena under rule 1.351." Id. at 857. We noted our agreement with Franklin, that an unrestricted medical authorization release form authorizing ex parte communications is inappropriate because "the potential for abuse exists when one party is ordered to execute a `blanket' medical release form for use by another party, regardless of whether the authorization is for an in-state or out-of-state provider." Id. We did not specifically discuss section 455.241(2).
[4] The reference to "such records" relates back to section 455.241(1) which discusses the records relating to a physical or mental examination or treatment made by a licensed health care practitioner.
[5] Initially, section 440.13(2) is excepted from the scope of section 455.241 because that statutory provision already creates an exception to patient records confidentiality in workers' compensation cases. Section 440.13(2)(f) states in relevant part:

Notwithstanding the limitations in s. 455.241 and subject to the limitations in s. 381.004, upon the request of the employer, the carrier, the attorney for either of them, or the rehabilitation provider, the medical records of an injured employee shall be furnished to such persons and the medical condition of the injured employee shall be discussed with such persons, provided the records and the discussions are restricted to conditions relating to the workplace injury or to situations where the employer or carrier has reason to believe there is a probable basis for filing a claim against the Special Disability Trust Fund as a result of such injury and the employee or his attorney has been furnished a copy of such claim.
§ 440.13(2)(f), Fla.Stat. (1993) (footnote omitted). This provision is no longer found in section 440.13(2). In fact, the language has been somewhat altered. See Ch. 93-415, § 17, Laws of Fla. (codified at section 440.13(4)(c), Florida Statutes (1995)).
[6] Cf. § 491.0147, Fla.Stat. (1993) (providing for a privilege of confidentiality in communications between patients and mental health professionals). Section 491.0147 provides:

Confidentiality and privileged communications.Any communication between any person licensed or certified under this chapter and his patient or client shall be confidential. This secrecy may be waived under the following conditions:
(1) When the person licensed or certified under this chapter is a party defendant to a civil, criminal, or disciplinary action arising from a complaint filed by the patient or client, in which case the waiver shall be limited to that action.
(2) When the patient or client agrees to the waiver, in writing, or, when more than one person in a family is receiving therapy, when each family member agrees to the waiver, in writing.
(3) When there is a clear and immediate probability of physical harm to the patient or client, to other individuals, or to society and the person licensed or certified under this chapter communicates the information only to the potential victim, appropriate family member, or law enforcement or other appropriate authorities.
[7] See Castillo-Plaza, 655 So.2d at 206 n. 4 (Jorgenson, J., dissenting) (reviewing the historical and public policy foundations for the privilege of confidentiality in physician-patient relations, including references to the Hippocratic oath and the relevant rules of conduct and ethics of the American Medical Association).
[8] Granted that the legislature does not always choose its language as carefully as we might like. However, the legislature has not cornered the market on this practice.