611 So.2d 1305 (1992)
MANOR CARE OF DUNEDIN, INC., d/b/a Manor Care of Dunedin, Petitioner,
v.
Vernon KEISER, as personal representative of the Estate of Bawnie Colonna, Respondent.
No. 92-02507.
District Court of Appeal of Florida, Second District.
December 30, 1992.
Rehearing Denied January 25, 1993.
*1306 Thomas M. Hoeler and Rodney W. Morgan of Shear, Newman, Hahn & Rosenkranz, P.A., Tampa, for petitioner.
Kevin A. McLean of McLean & Schecht, P.A., Tampa, for respondent.
PER CURIAM.
Manor Care of Dunedin (hereafter "Manor Care") seeks a writ of certiorari to review a protective order entered by the circuit court in a pending tort action.
This case stems from the death of Bawnie Colonna, briefly a resident at a nursing home owned and operated by Manor Care. Ms. Colonna appears to have suffered from numerous health problems over the course of her lifetime. Her death was ascribed to "natural causes," but the personal representative of Ms. Colonna's estate (hereafter "plaintiff") later filed a three-count complaint against Manor Care alleging negligence, wrongful death, and violation of a nursing home patient's rights.[1]
The order under review is captioned "order denying motion to permit ex parte interviews of defendant's employees and to prohibit said interviews by plaintiff." This order was entered in response to a demand by plaintiff's counsel that defense counsel not communicate ex parte with any of Manor Care's former employees who may have attended to Ms. Colonna. Plaintiff's counsel based the demand on his interpretation of section 455.241, Florida Statutes (1991). Manor Care countered with a similar demand of its own, claiming attorney-client privilege. The circuit court concluded that plaintiff, but not Manor Care, could contact and communicate with the former employees.[2]
Section 455.241 extends privileged status to a patient's medical records. Unless consent is given, those records may not be furnished to, nor the patient's medical condition "discussed" with, anyone other than the patient, the patient's legal representative, or another health care provider which is treating the patient.

*1307 [T]he purpose of the statute is to preserve a patient's right to confidentiality with respect to information disclosed to a health care provider in the course of the care and treatment of a patient and to limit the conditions under which such information may be disclosed to others. This includes closing the door to the previous practice of many defense attorneys of meeting privately or otherwise communicating ex parte with the plaintiff's treating physician.
West v. Branham, 576 So.2d 381, 383 (Fla. 4th DCA), rev. dismissed, 583 So.2d 1034 (Fla. 1991).
This statute, which is found within a chapter dealing with "regulation of professions and occupations," is directed to "licensed health care practitioners." We do not believe that its scope is sufficiently broad to preclude Manor Care from contacting any and all former employees in the course of preparing its defense, and we would quash the circuit court's order on this basis alone. However, we do agree that some nursing home personnel may be covered by the statute.[3] Thus we must determine whether any exception exists which would permit Manor Care, as a defendant, to discuss with such persons a former patient's condition or subject that patient's records to disclosure without prior notice and resort to subpoena. We find such an exception for health care providers who are, or reasonably expect to be, sued by the patient. See Franklin v. Nationwide Mutual Fire Insurance Co., 566 So.2d 529, 532 (Fla. 1st DCA), rev. dismissed, 574 So.2d 142 (Fla. 1990) (privilege applies "in all cases other than those where the health care provider is a defendant").
After first proscribing disclosure of patient records and "discussion" of patients' medical condition, subsection (2) of section 455.241 declares that "such records may be furnished without written authorization" under several circumstances, including compulsory physical examinations conducted pursuant to the rules of civil procedure and subpoena in any criminal or civil proceeding after notice. It then provides:
Except in a medical negligence action when a health care provider is or reasonably expects to be named as a defendant, information disclosed to a health care practitioner by a patient in the course of the care and treatment of such patient is confidential and may be disclosed only to other health care providers involved in the care or treatment of the patient, or if permitted by written authorization from the patient or compelled by subpoena at a deposition, evidentiary hearing, or trial for which proper notice has been given.
The only reasonable construction of this provision is that the legislature intended to impose no impediment to health care practitioners' disclosure of patient data in their own possession once litigation is imminent, at least to the extent necessary to defend against such litigation.[4] Moreover, the statute should present no impediment to informal investigatory contact with former employees, since their knowledge of the patient's condition can only have arisen while in the service of the particular provider/defendant. In effect the legislature has codified a variant of the "sword and shield" doctrine. To hold otherwise would confer an unequal advantage upon plaintiffs' counsel in such cases.
*1308 We recognize that this court has taken the position that nursing homes are not "health care providers" for purposes of statutes dealing with medical malpractice. See, e.g., NME Properties, Inc. v. McCullough, 590 So.2d 439 (Fla. 2d DCA 1991).[5] However, the holding in NME Properties was based upon the exclusion of nursing homes from definitions of "health care provider" in sections 766.101(1)(b) and 766.105(1)(b), Florida Statutes (1991). Other statutory definitions of this same or virtually identical terms are broader in scope. For example, section 458.331(1)(i), proscribing payment or acceptance of referral fees by physicians, does include nursing homes among "providers of health care goods and services." In sum, plaintiff cannot have it both ways. If Manor Care is not a "health care provider," it is not bound by the statutory privilege; if it is, it may avail itself of the statutory exception.
Accordingly, we grant the petition for writ of certiorari and quash that portion of the circuit court's order barring Manor Care from contacting former employees as part of the preparation of its defense.
Manor Care also asks us to quash that portion of the circuit court's order which allows plaintiff to contact former Manor Care employees. Clearly, it is improper for a lawyer to engage in ex parte communications with parties who are themselves represented by lawyers. This prohibition applies as well to individual (unrepresented) employees of a (represented) corporation, because the acts or omissions of employees "may be imputed to the organization for purposes of criminal or civil liability." See Comment to Rule 4-4.2, Rules of Professional Conduct. However, this general rule ceases to apply once those employees leave the corporation. See Hanntz v. Shiley, Inc., 766 F. Supp. 258 (D.N.J. 1991). We hold that the circuit court did not depart from the essential requirements of law in refusing Manor Care's motion for protective order.[6]
The petition for writ of certiorari is granted in part and denied in part, and this case is remanded to circuit court for further proceedings consistent with this opinion.
RYDER, A.C.J., and CAMPBELL and THREADGILL, JJ., concur.
NOTES
[1] § 400.022 and 400.023, Fla. Stat. (1991).
[2] The case comes to us in a rather unusual procedural posture. Since the trial court refused Manor Care's request for a protective order, thereby exposing to disclosure certain matters to which Manor Care asserted privilege, the order would if incorrect result in the sort of "irreparable injury" for which certiorari is the accepted method of redress. See generally Boucher v. Pure Oil Co., 101 So.2d 408 (Fla. 1st DCA 1958). We therefore conclude we have jurisdiction to review the order in toto even though we do not believe this portion of the order to be erroneous. Alternatively, Manor Care argues that certiorari is appropriate to review orders which substantially interfere with a party's right to be represented by counsel or to mount an adequate defense. A handful of cases do find "irreparable injury" in such situations even where the error complained of might be remediable on plenary appeal. See particularly Outdoor Resorts at Orlando, Inc. v. Hotz Management Co., Inc., 483 So.2d 2 (Fla. 2d DCA 1985), involving the denial of a continuance needed to accommodate a material witness. See also Thompson v. General Motors Corp., Inc., 439 So.2d 1012 (Fla. 2d DCA 1983). Finally, it is suggested that "[t]he attorneys practicing in this area of law are bitterly divided" over the significance of section 455.241, and the resulting "confusion among the trial judges and the local bar" is in need of immediate clarification. "[T]here is precedent for our early intervention where a departure from the essential requirements of law is found to exist and numerous similar cases, involving identical legal issues, may also be pending or forthcoming." Pearlstein v. Malunney, 500 So.2d 585, 587-8 (Fla. 2d DCA 1986), rev. denied 511 So.2d 299 (Fla. 1987). We agree that this case, which appears to be one of first impression, involves a question of potentially widespread importance.
[3] At first blush it was not abundantly clear to us that section 455.241 was intended to cover nursing homes at all. A list of several statutory chapters is referenced in subsection (1). It includes chapters regulating such diverse professions as medicine, osteopathy, dentistry, nursing, and optics. Noticeably absent is Chapter 400, dealing with "nursing homes and related health care facilities." However, nursing home residents' medical records are also afforded privileged status by § 400.022(1)(h), Fla. Stat. (1991). This, plus the definition of "nursing home facility" in § 400.021(10) as "any facility which provides nursing services as defined in chapter 464"  one of the chapters specifically mentioned in subsection (1)  leads us to conclude that nursing homes are statutorily bound to respect the privilege afforded by section 455.241.
[4] We decline to speculate as to the outer limits of such disclosure; suffice it to say it could include, in addition to attorneys, paralegals and experts retained for the defense of the suit.
[5] It is also true that Manor Care is not being sued for medical malpractice. However, in NME Properties and in Arthur v. Unicare Health Facilities, Inc., 602 So.2d 596, 600 fn. 5 (Fla. 2d DCA 1992), we suggested that a complaint against a nursing home could allege vicarious liability for medical malpractice stemming from the actions of health care providers.
[6] A recently published order by District Judge Kovachevich contains a thorough discussion of "ex parte contact with former employees" and concludes that "a former employee who is a `party' because of his position and knowledge will remain a party even after he leaves the corporation ... The corporation continues to have a vital interest in the employee's knowledge of privileged information and its potential release to opposing counsel in litigation after the employee leaves." Rentclub, Inc. v. Transamerica Rental Finance Corp., No. 90-1452-CIV-T-17, 1992 WL 161059 (M.D.Fla. June 30, 1992) [6 F.L.W.Fed. D291]. In moving for a protective order, Manor Care did not identify specific former employees who might fall within this privileged "managerial" class identified by Judge Kovachevich, but rather sought a blanket proscription against contact with any and all former employees. Our holding is therefore without prejudice to Manor Care to renew its objection in the event it can point to individuals who have been the recipients of privileged information.