826 So.2d 332 (2002)
David ROYAL, M.D., and Watson Clinic, L.L.P., a Florida limited liability partnership, Petitioners,
v.
Isaac "Ike" HARNAGE, as Personal Representative of the Estate of Ruby Harnage, Respondent.
No. 2D01-3559.
District Court of Appeal of Florida, Second District.
April 5, 2002.
Rehearing Denied May 16, 2002.
*333 Susan W. Fox and Stephen H. Sears of Macfarlane Ferguson & McMullen, Tampa, for Petitioners.
*334 George A. Vaka of Vaka, Larson & Johnson, P.L., Tampa, for Respondent.
ALTENBERND, Judge.
David Royal, M.D., and the Watson Clinic, defendants in a medical malpractice case, seek a common law writ of certiorari to quash a pretrial order that provides: "No party nor representative of any party nor any attorney shall talk to the deponent, G. Douglas Letson, M.D., until after he is sworn to testify for his deposition or at trial, if there is one." The trial court entered this order based upon a finding that the communications were prohibited by the physician-patient privilege established by section 455.667, Florida Statutes (1999).[1] We conclude that the statutory physician-patient privilege did not attach to prevent communications between the health care providers involved as defendants in this lawsuit and Dr. Letson, because all three were involved in the treatment of the patient giving rise to the potential malpractice claim. The filing of the lawsuit could not create a privilege where none had previously existed. Because the trial court's order departs from the essential requirements of law and results in a material injury that cannot be corrected on postjudgment appeal, we grant the writ and quash the order.
In July 1999, Ruby Harnage underwent an operation to treat an infection resulting from hip surgery. The operation was performed at the Watson Clinic at the direction of Ms. Harnage's treating physician, Dr. Letson. At that time, Dr. Letson was a general surgeon and an employee of the Watson Clinic. During the surgery and at Dr. Letson's request, Dr. Royal, who is an anesthesiologist and an employee and partner in the Watson Clinic, inserted a catheter through Ms. Harnage's chest to administer anti-biotics. Following the surgery, Ms. Harnage developed internal bleeding, which was allegedly related to the catheter. The bleeding caused a drop in her blood pressure, and she died within a few hours.
Isaac "Ike" Harnage, as Personal Representative of the Estate of Ruby Harnage (the Estate), filed a medical malpractice wrongful death action against Dr. Royal and the Watson Clinic. The complaint alleged that Dr. Royal was negligent in administering the catheter and anesthesia and that the Watson Clinic was vicariously liable for Dr. Royal's conduct and directly liable because it "negligently failed to monitor the technical proficiency of its doctors." In part, the Estate contended that Dr. Royal failed to appropriately evaluate Ms. Harnage before, during, and after the operation. Dr. Letson is not a named defendant in the suit, and no one argues, at least at this stage of the litigation, that he committed any negligent act. By the time the lawsuit was filed, Dr. Letson was no longer employed by the Watson Clinic.
During pretrial discovery, the Estate scheduled Dr. Letson for deposition and sent him a letter instructing him not to speak with anyone at the Watson Clinic or with the opposing attorneys. The attorney for the Watson Clinic objected, and the Estate sought an order from the trial court prohibiting contact between the defendants or their counsel and Dr. Letson prior to Dr. Letson's sworn deposition testimony. The Estate argued that such contact was precluded pursuant to section 455.667, which creates a physician-patient privilege and provides for the confidentiality of medical records. The trial court *335 agreed and entered the order prohibiting any party or any attorney from contacting Dr. Letson prior to his sworn testimony at deposition or trial. The defendants now seek a common law writ of certiorari to quash this order.
We note at the outset of our analysis that, even if the trial court's order were otherwise proper, the language of the order seems unnecessarily broad. It prohibits any lawyer from talking to Dr. Letson about anything prior to a deposition or trial in this case. If read literally, Dr. Letson cannot talk to a lawyer in a social setting about anything. The record reflects that the lawyers defending this case are defending Dr. Letson and the Watson Clinic in a separate, unrelated action. The trial court in this case had no authority to bar discussions between Dr. Letson and his lawyers about the matters involved in the other case. Likewise, the order appears to prevent Dr. Letson from obtaining legal advice from his own lawyer prior to his deposition in this case. We are not inclined to believe that section 455.667 bars all discussion between a health care provider and his or her attorney concerning an upcoming deposition. Dr. Letson, however, is not the petitioner in this case and has not appeared personally to object to the terms of this order as they relate to him.[2] Thus, we do not rule upon these matters.
The dispositive question is whether the statutory privilege contained in section 455.667 prohibits the Watson Clinic, Dr. Royal or their counsel from communicating with Dr. Letson, a health care provider involved in Ms. Harnage's treatment and a former employee of the Watson Clinic. The trial court prohibited contact by the defendants and their lawyers because Dr. Letson is not a defendant in the malpractice litigation and not likely to become a defendant. See § 455.667(6). Even if Dr. Letson is unlikely to be sued, we conclude that the statutory privilege does not support this prohibition under these circumstances.
The recent origins and the purposes of section 455.667 are discussed at length in Acosta v. Richter, 671 So.2d 149 (Fla.1996). This statute "provides for a broad physician-patient privilege of confidentiality for a patient's medical information and a limited exception to the privilege for disclosure by a defendant physician in a medical negligence action in order for the physician to defend herself." 671 So.2d at 150. The medical negligence exception is contained in section 455.667(6). That exception provides:
(b) Except in a medical negligence action or administrative proceeding when a health care practitioner or provider is or reasonably expects to be named as a defendant, information disclosed to a health care practitioner by a patient in the course of the care and treatment of such patient is confidential and may be disclosed only to other health care practitioners and providers involved in the care or treatment of the patient, or if permitted by written authorization from the patient or compelled by subpoena at a deposition, evidentiary hearing, or trial for which proper notice has been given.
In practical terms, the medical negligence exception is a limited waiver of an existing *336 privilege. The waiver occurs when the patient chooses to pursue a claim.
In this case, the Watson Clinic and Dr. Royal have been named as defendants in a lawsuit. Thus, there is no dispute that the Estate has waived the physician-patient privilege as to the Watson Clinic and Dr. Royal. These defendants may share the medical records of Ms. Harnage with their lawyers and discuss her treatment with these lawyers without reservation.[3] The Estate, however, maintains that its lawsuit does not waive the privilege and does not permit the Watson Clinic and Dr. Royal to discuss this lawsuit with other employees of the Watson Clinic who were not allegedly negligent and who are also health care providers. For purposes of this opinion, we accept the representation of the Estate that Dr. Letson will not be named as a defendant in this action. We conclude, however, that the Estate misconstrues the breadth of the statutory privilege.
The medical negligence exception exists to permit defendants to defend themselves in a lawsuit filed by a former patient. Other courts have ruled that the statutory privilege is waived even between a hospital and health care providers for whom the hospital denies responsibility. See Alachua Gen. Hosp., Inc. v. Stewart, 649 So.2d 357 (Fla. 1st DCA 1995). We hesitate to find a privilege that prevents a defendant from discussing a lawsuit with present or former employees. See, e.g., Manor Care of Dunedin, Inc. v. Keiser, 611 So.2d 1305 (Fla. 2d DCA 1992) (holding that nursing home defendant in wrongful death action was not prohibited from contacting former employees and conducting ex parte interviews). The facts in this case, however, permit an even narrower holding.
In this case, we are confronted with circumstances in which the patient maintains that the privilege bars communication between and among health care providers who were involved in the care or treatment of the patient giving rise to the malpractice litigation. Section 455.667 makes clear in both subsections (5) and (6) that the privilege does not exist among "health care practitioners and providers involved in the care or treatment of the patient." For many practical reasons, doctors involved in the care of a patient must be free to share with one another all information about the patient. Thus, in this case, a privilege protecting the privacy of Ms. Harnage's medical condition did not exist among the Watson Clinic, Dr. Royal, and Dr. Letson at the time of her operation. Nothing in the statute suggests that the subsequent filing of a lawsuit, which is normally an exception or a waiver of the privilege, creates a new privilege limiting prospective communication between health care providers concerning matters that were not privileged between them at an earlier time. At least in the context of a lawsuit involving members or co-employees of a professional association or partnership, we conclude that the filing of the lawsuit does not create a privilege where none existed in the past. Likewise, the filing of this lawsuit permits the attorneys representing the Watson Clinic and Dr. Royal to discuss Ms. Harnage's medical condition and her treatment with any health care provider with whom their clients were authorized to communicate prior to the lawsuit. Accordingly, the statute does not support the trial court's order. No one suggests any other legal authority to restrict communication between the lawyers or parties.
In generic terms, certiorari is used to cure serious legal errors that cannot *337 be adequately remedied on direct appeal. Certiorari is appropriate "when a discovery order departs from the essential requirements of law, causing material injury to a petitioner throughout the remainder of the proceedings below and effectively leaving no adequate remedy on appeal." Allstate Ins. Co. v. Langston, 655 So.2d 91, 94 (Fla.1995). See also Morgan, Colling & Gilbert, P.A. v. Pope, 798 So.2d 1, 3 (Fla. 2d DCA 2001); Parkway Bank v. Fort Myers Armature Works, Inc., 658 So.2d 646, 649 (Fla. 2d DCA 1995). The actual effect, at any eventual trial, of an order restricting pretrial communications is difficult or impossible to assess. Nevertheless, such restrictions on the lawyer-client relationship and on free communication during pretrial litigation have repeatedly been regarded as causing sufficient irreparable injury prior to the trial to allow an appellate court to police the enforcement of this statute using the writ of certiorari. See Alachua Gen. Hosp., 649 So.2d 357 (granting certiorari to quash trial court order that refused to permit hospital to conduct ex parte interviews with nonparty physician who treated patient at hospital and for whose negligence plaintiffs sought to hold hospital responsible); Pub. Health Trust of Dade County v. Franklin, 693 So.2d 1043 (Fla. 3d DCA 1997) (same); Manor Care of Dunedin, 611 So.2d 1305 (granting certiorari to quash trial court order prohibiting nursing home from contacting former employees ex parte to prepare defense). Accordingly, we conclude that the trial court's order departs from the essential requirements of the law and quash the order.
Petition for writ of certiorari granted.
PARKER and COVINGTON, JJ., Concur.
NOTES
[1] Section 456.057, Florida Statutes (2001), is the current version of this statute. These provisions were initially numbered as section 455.241, Florida Statutes (Supp.1988), and then renumbered as section 455.667, Florida Statutes (1997).
[2] Moreover, because Dr. Letson was not a party in the proceedings and apparently did not receive notice or an opportunity to be heard on this matter, the order would appear to bind only the conduct of the parties to the litigation and their counsel, and not Dr. Letson personally. Cf. HCA Health Servs. of Fla., Inc. v. Ratican, 475 So.2d 981, 982 (Fla. 3d DCA 1985) (order is not binding upon entity which has not been properly served or noticed).
[3] From our record, it is not clear whether Dr. Letson has any medical records in his possession that are not also possessed by the Watson Clinic.