862 So.2d 745 (2003)
Joseph LEMIEUX and his wife, Elaine Lemieux, Petitioners,
v.
TANDEM HEALTH CARE OF FLORIDA, INC. d/b/a Arbors At Winter Haven and Winter Haven Care, LLC d/b/a Arbors At Winter Haven, Respondents.
No. 2D03-1317.
District Court of Appeal of Florida, Second District.
October 29, 2003.
Rehearing Denied January 13, 2004.
*747 Neal L. O'Toole and Joseph R. Kruk, III, of Law Offices of Neal L. O'Toole, P.A., Bartow, for Petitioners.
Caroline H. Cranton of Alvarez, Sambol, Winthrop & Madson, P.A., Orlando, for Respondents.
VILLANTI, Judge.
Joseph and Elaine Lemieux seek certiorari review of the trial court's order granting a motion filed by Tandem Health Care of Florida, Inc. d/b/a Arbors at Winter Haven and Winter Haven Care, LLC d/b/a Arbors at Winter Haven (collectively "Arbors"), which sought permission to conduct ex parte discussions with Mr. Lemieux's treating physicians. Because the trial court's order departs from the essential requirements of the law, we grant the petition, issue the writ, and quash the trial court's order.
On January 1, 2000, Mr. Lemieux was involved in a serious automobile accident that resulted in his hospitalization at Lakeland Regional Medical Center. While a patient there, Mr. Lemieux was treated by orthopedic surgeon Dr. Mark Greenberg. Approximately three weeks later, Dr. Greenberg discharged Mr. Lemieux to Arbors, which is an in-patient rehabilitation facility. While Mr. Lemieux was a patient at Arbors, his treating physician was Dr. Mari Fielding. In late April 2000, Mr. Lemieux began to treat with another orthopedic surgeon, Dr. Stephen Goll. Ultimately, Dr. Goll discharged Mr. Lemieux from Arbors, and Mr. Lemieux thereafter received further treatment at a different facility. While Dr. Fielding had privileges at Arbors, neither Dr. Greenberg, Dr. Fielding, nor Dr. Goll were employees or agents of Arbors.
In September 2001, Mr. and Mrs. Lemieux sued Arbors for various violations of chapter 400, Florida Statutes, and for negligent hiring and retention of staff. Germane to our analysis, the complaint did not state any cause of action for medical malpractice. After some discovery had occurred, Arbors filed a motion seeking court approval to conduct ex parte discussions with Dr. Greenberg, Dr. Fielding, and Dr. Goll (collectively "the treating physicians"). The motion asserted that the treating physicians had "pertinent information regarding Joseph Lemieux's preexisting medical conditions and medical conditions that arose prior to, during, and subsequent to Joseph Lemieux's residency at Arbors of Winter Haven." The motion contended that Arbors' intended discussions with the treating physicians fell within an exception to the physician-patient privilege of section 456.057(6), Florida Statutes (2002), because both the treating physicians and Arbors were "healthcare practitioners and providers involved in the care or treatment" of Mr. Lemieux. In the alternative, Arbors contended that ex parte discussions would be the "most cost effective" discovery method available and that Florida courts favored the "free flow of information." Despite Mr. Lemieux's vigorous opposition to these ex parte discussions, the trial court granted Arbors' motion. Mr. Lemieux then filed this petition for certiorari, and the trial court stayed all discovery pending resolution of this appeal.
We begin by noting that certiorari is the appropriate vehicle for reviewing *748 this order. "[R]eview by certiorari is appropriate when a discovery order departs from the essential requirements of law, causing material injury to a petitioner throughout the remainder of the proceedings below and effectively leaving no adequate remedy on appeal." Allstate Ins. Co. v. Langston, 655 So.2d 91, 94 (Fla. 1995). As a general rule, this court has certiorari jurisdiction to review orders allowing discovery of privileged information because once privileged information is wrongfully disclosed, there is no adequate remedy on direct appeal. Martin-Johnson, Inc. v. Savage, 509 So.2d 1097, 1099 (Fla.1987). In the context of the statutory physician-patient privilege, certiorari review is appropriate because "[d]isclosure of information by ex parte communication violating matters statutorily privileged ... would cause `cat out of the bag' harm." Melody v. State, Dep't of Health & Rehabilitative Servs., 706 So.2d 115, 117 (Fla. 4th DCA 1998) (citing Martin-Johnson, 509 So.2d at 1099); see also Royal v. Harnage, 826 So.2d 332 (Fla. 2d DCA 2002) (reviewing by certiorari a discovery order that purportedly violated the statutory physician-patient privilege). Thus, we have certiorari jurisdiction to review the order at issue.
Turning to the merits, we agree with Mr. Lemieux that the trial court's order departed from the essential requirements of the law. Prior to 1988, a limited statutory privilege existed for certain medical records, see § 455.241(2), Fla. Stat. (1987), but there was no general statutory physician-patient privilege. Acosta v. Richter, 671 So.2d 149, 150 (Fla.1996). In 1988, the legislature amended section 455.241(2), which was subsequently renumbered as section 456.057, to create a broad and express privilege of confidentiality as to the medical records and medical condition of a patient. Acosta, 671 So.2d at 154. "[T]he primary purpose of the 1988 amendment was to create a physician-patient privilege where none existed before, and to provide an explicit but limited scheme for the disclosure of personal medical information." Id.
As currently written, section 456.057(6) provides in pertinent part:
Except in a medical negligence action or administrative proceeding when a health care practitioner or provider is or reasonably expects to be named as a defendant, information disclosed to a health care practitioner by a patient in the course of the care and treatment of such patient is confidential and may be disclosed only to other health care practitioners and providers involved in the care or treatment of the patient, or if permitted by written authorization from the patient or compelled by subpoena at a deposition, evidentiary hearing, or trial for which proper notice has been given.
Under the plain language of this statute, patient information is privileged and may not be disclosed unless the disclosure falls within one of the statutory exceptions. Acosta, 671 So.2d at 155. These exceptions allow for disclosure (1) to other health care providers involved in the care and treatment of the patient; (2) if permitted by written authorization from the patient; (3) if compelled by subpoena; and (4) to attorneys, experts, and other individuals necessary to defend the physician in a medical negligence action in which the physician is or expects to be a defendant. Id. at 155-56. No other disclosures are statutorily permitted, and an order allowing for disclosure in any other context departs from the essential requirements of the law.[1]
*749 In this case, Arbors contends that exception one, which allows health care providers to share information regarding the care and treatment of a patient among themselves, allows for these disclosures to continue ad infinitum, regardless of whether the health care providers are currently treating the patient. Its argument is that if the health care providers could have shared the information before suit was filed, then they should be able to share the information after suit is filed. While this argument has some superficial logic, it violates the language of the statute and controlling case law.
Exception one was intended to allow only health care providers currently involved in the care and treatment of the patient to share information about the patient's medical condition. If this exception did not exist, doctors would not be able to share information relayed to them by the patient with the nurses handling the patient's day-to-day care, nurses would not be able to share information they gathered with the patient's treating physician, and no one would be permitted to read lab reports. By allowing the exchange of information between health care providers "involved in the care or treatment of the patient," the statute recognizes that health care providers must be allowed to share information in order to comprehensively treat the patient. See Royal, 826 So.2d at 336 (noting that for practical reasons, doctors involved in the care of a patient must be free to share information about the patient). However, once the health care providers are no longer "involved in the care or treatment of the patient," they may not continue to discuss a patient's confidential medical information for their own, or anyone else's, purposes. Once the underlying reason for the exception ends, so too must the disclosures permitted by that exception.
Moreover, even if continued disclosure between health care providers was permitted, nothing in exception one allows for the disclosure of confidential medical information by one health care provider to the attorney of a different health care provider.[2] As the supreme court noted:

*750 Patently, the purpose of the statute is to preserve a patient's right to confidentiality with respect to information disclosed to a health care provider in the course of the care and treatment of a patient and to limit the conditions under which such information may be disclosed to others. This includes closing the door to the previous practice of many defense attorneys of meeting privately or otherwise communicating ex parte with the plaintiff's treating physicians.

Acosta, 671 So.2d at 152 (quoting West v. Branham, 576 So.2d 381, 383 (Fla. 4th DCA 1991)) (emphasis added); see also Kirkland v. Middleton, 639 So.2d 1002, 1004 (Fla. 5th DCA 1994) (prohibiting ex parte discussions between the plaintiff's treating physicians and defense counsel and noting that if such discussions were allowed, "medical malpractice plaintiffs could not object and act to protect against inadvertent disclosure of privileged information, nor could they effectively prove that improper disclosure actually took place"); Phillips v. Ficarra, 618 So.2d 312, 314 (Fla. 4th DCA 1993) (noting that defense counsel's ex parte discussions with the plaintiff's treating physician would violate the statute, "which prohibits communications between a doctor and a third party regarding the medical condition of the doctor's patient unless compelled by a subpoena for deposition, evidentiary hearing, or at trial"); Franklin v. Nationwide Mut. Fire Ins. Co., 566 So.2d 529, 532 (Fla. 1st DCA 1990) (noting that the statutory language requiring notice to the plaintiff before disclosures were made was clearly intended to preclude unilateral, ex parte discussions between the plaintiff's treating physicians and defense counsel). Because this wealth of controlling case law clearly holds that ex parte discussions between a defense attorney and the plaintiff's treating physicians are barred by section 456.057(6), any order allowing such discussions, including the order in this case, departs from the essential requirements of the law.
In an effort to avoid the clear language of these cases, Arbors argues that the trial court did not depart from the essential requirements of the law because it simply followed this court's decision in Royal v. Harnage, 826 So.2d 332 (Fla. 2d DCA 2002). This argument both misreads Royal and misapplies it to the facts of this case.
In Royal, this court held that in the context of a medical malpractice case, a defendant may have ex parte discussions concerning the plaintiff's confidential medical information with that defendant's current and former employees. Id. at 336. Two other courts have similarly allowed for ex parte discussions between a medical malpractice defendant and its agents, employees, and former employees. See Melody, 706 So.2d at 118 (recognizing that the statutory physician-patient privilege would not prevent discussions between a defendant and its agents or employees); Pub. Health Trust of Dade County v. Franklin, 693 So.2d 1043, 1046 (Fla. 3d DCA 1997) (same). The rationale behind these rulings is that the agent, employee, or former employee would have necessarily obtained the privileged information while in the defendant's employ and therefore that information is legally imputed to the defendant. Pub. Health Trust, 693 So.2d at 1045. Contrary to Arbors' arguments, the Royal case does not stand for the proposition that the statutory privilege is forever waived between health care providers who could have at some prior point in time discussed a patient's care with each other. Rather, Royal stands for only the limited proposition that a medical malpractice defendant may not be barred from having ex parte discussions with its current and former employees about information they obtained *751 about a patient during and as a result of that employee's employment. Arbors' expansive interpretation misreads the holding of the Royal case.
Further, in this case, unlike in Royal, Arbors does not seek to have ex parte discussions with its agents, employees, or former employees. Rather, it seeks to have ex parte discussions with two physicians who have no relation to the facility at all and one physician who simply has privileges there. This factual distinction, standing alone, renders the Royal holding inapplicable to this case. No case has ever held that the statutory privilege is inapplicable on similar facts, nor would such a holding comport with the provisions of the statute. In the face of case law specifically prohibiting such ex parte discussions and with no case law or statute providing an applicable exception to the privilege, the trial court's order allowing the requested ex parte discussions departed from the essential requirements of the law.
Finally, as Arbors admits, the trial court's ruling does not bar it from obtaining the information it seeks from Mr. Lemieux's treating physicians. Under section 456.057(6), the treating physicians may be compelled to disclose Mr. Lemieux's confidential medical information pursuant to a subpoena for deposition. Thus, Arbors may obtain the information it seeks by simply deposing the treating physicians. Its desire to obtain the information in the "most cost effective" manner cannot override the rights of the protected party, the language of section 456.057(6), or controlling precedent on this issue.
Because the trial court's order in this case departs from the essential requirements of the law by allowing ex parte disclosures of statutorily privileged medical information contrary to both the language of the statute and controlling case law, we grant the petition for writ of certiorari, issue the writ, and quash the trial court's order.
Petition granted.
CASANUEVA, J., concurs.
CANADY, J., dissents with opinion.
CANADY, Judge, dissenting.
Because I have concluded that there is no clearly established law which precludes ex parte discussions between the providers who were jointly responsible for the treatment of Mr. Lemieux, I dissent.
The majority correctly states that we should grant the petition for certiorari only if there has been a departure from the essential requirements of law. In order for an appellate court to conclude that a trial court's order departs from the essential requirements of law, the reviewing court must determine that the order violates a clearly established principle of law. State v. Pettis, 520 So.2d 250, 254 (Fla. 1988) ("While some pretrial evidentiary rulings may qualify for certiorari, it must be remembered that the extraordinary writ is reserved for those situations where `there has been a violation of a clearly established principle of law resulting in a miscarriage of justice.'") (citing Combs v. State, 436 So.2d 93, 96 (Fla.1983)); Malloy v. Gunster, Yoakley, Valdes-Fauli & Stewart, P.A., 850 So.2d 578 (Fla. 2d DCA 2003); Allstate Ins. Co. v. Hodges, 855 So.2d 636 (Fla. 2d DCA 2003).
None of the cases on which the majority relies dealt with the communication of information related to the prior treatment of a patient by one provider who was responsible for that prior treatment to another provider who was also responsible for the care of the patient during the same time period. What the majority refers to as a "wealth of controlling case law" simply does not address the distinct issue that the trial court was called on to address. None *752 of the cases cited by the majority hold that a disclosure by one provider to another is authorized only if it is made in the course of the treatment provided to the patient. There is thus nothing in the case law articulating a clearly established principle of law which is inconsistent with the trial court's ruling.
Nor does the text of the statute clearly establish that the trial court's ruling is subject to correction by way of certiorari. The provision of section 456.057(6) authorizing the disclosure of confidential information "to other health care practitioners and providers involved in the care or treatment of the patient" may reasonably be interpreted in the way it was interpreted by the trial court. The statute does not expressly limit the authorized disclosures to those disclosures that are made during the course of the patient's treatment. On the face of the statute, it is not unreasonable to understand the authorized disclosures as encompassing information communicated from one provider to another provider after their joint care and treatment of the patient has ceased. While I might agree with the majority that such an interpretation of the statute is on balance not the most reasonable interpretation, that does not mean that it constitutes a violation of a clearly established principle of law.
I also note that the statutory provision authorizing disclosure by one provider to another can only reasonably be understood as extending to communications made through the employees and agents (including attorneys) of the providers. Interpreting the statute to prohibit such disclosure through employees and agents would impose an entirely unworkable limitation on the exchange of information which the statute clearly contemplates and authorizes.
I acknowledge that in Allstate Insurance Co. v. Kaklamanos, 843 So.2d 885, 890 (Fla.2003), the supreme court stated that "`clearly established law" can derive from a variety of legal sources, including recent controlling case law, rules of court, statutes, and constitutional law." But surely this does not mean that there is a clearly established principle of law whenever the trial court has made a ruling based on its interpretation of a statute, rule, or constitutional provision and the reviewing court disagrees with that interpretation. If certiorari were appropriate in all such cases, the requirement for the violation of a clearly established principle of law would be rendered virtually meaningless. It is more reasonable to understand Kaklamanos as referring to circumstances where the statute, rule, or constitutional provision is so perspicuous that it is only subject to one reasonable interpretation. Such circumstances are not present here.
Accordingly, I conclude that the petitioners have failed to establish that the trial court departed from the essential requirements of law. I therefore dissent from the majority's decision to grant the petition for writ of certiorari.
NOTES
[1] We note that the newly enacted privacy provisions of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), were not enforceable until April 14, 2003, almost two months after the trial court's order in this case. Moreover, the HIPAA provisions preempt only those state privacy or privilege provisions that are less stringent than the HIPAA ones. See 45 C.F.R. § 160.203 (2003). It appears that the HIPAA procedural requirements for disclosure are more stringent than those in Florida. Compare § 456.057(6), Fla. Stat. (2002) (allowing disclosure of protected health care information to those entities falling within the statutory exceptions with no notice or opportunity to object), with 45 C.F.R. § 164.512(e)(1)(iii) (2003) (allowing for disclosure of protected health information for litigation purposes only if the disclosing entity has provided written notice of its intent to disclose with sufficient time for the individual to object to the disclosure). However, the substantive provisions of section 456.057(6) are more stringent than those of HIPAA. Compare § 456.057(6) (prohibiting disclosure of protected health care information except to entities falling within the four statutory exceptions) with 45 C.F.R. § 164.512(e)(1)(i) (allowing disclosure of protected health care information to any third party as long as "satisfactory assurances" are provided). Because Florida's substantive law on this issue is more stringent than HIPAA, Florida law controls and the HIPAA provisions would not alter the outcome.
[2] In the context of a medical malpractice action, section 456.057(6) clearly allows a defendant to share the patient's confidential information in its possession with that defendant's own attorney in order to prepare a defense. Acosta, 671 So.2d at 156. In this case, however, Arbors seeks to have Mr. Lemieux's nondefendant treating physicians disclose confidential information in their possession to Arbors' attorney.