WALLACE, Judge.
Jeffrey Smith and Melissa Smith filed an action against Lee Memorial Health System, d/b/a HealthPark Medical Center, for alleged medical malpractice in the care and treatment of their minor child. Lee Memorial sought a protective order to prohibit the Smiths’ counsel from having communications outside the presence of Lee Memorial’s counsel with the child’s treating physicians who are employed by Lee Memorial. The circuit court entered an order denying the requested protective order, and Lee Memorial petitions for a writ of certiorari to quash the circuit court’s order. We conclude that Florida Rule of Professional Conduct 4-4.2 does not limit the Smiths’ attorneys from communicating with the child’s treating physicians despite *810 the treating physicians’ employment by Lee Memorial. It follows that the circuit court did not depart from the essential requirements of the law in declining to enter the requested protective order. Accordingly, we deny the petition for writ of certiorari.
I. THE FACTS AND PROCEDURAL BACKGROUND
In July 2007, the Smiths’ daughter was born prematurely in a hospital operated by Lee Memorial. The child was immediately admitted to the hospital’s Neonatal Intensive Care Unit (NICU). While in the NICU, the child received neonatal parenteral nutrition through a central venous line.
On August 31, 2009, the Smiths filed a medical malpractice action on behalf of their daughter against Lee Memorial. In their complaint, the Smiths alleged that on or about July 25, 2007, the amount of vitamins and trace elements in the nutritional solution given to their daughter was improperly calculated. The Smiths alleged that as a result of this improper calculation, their daughter received an overdose of trace elements that caused her to suffer a variety of serious, permanent injuries. The injuries alleged in the complaint included permanent neurological damage, lack of normal head growth, developmental delay, spastic quadriparetic cerebral palsy, and visual inattentiveness.
In its answer to the complaint, Lee Memorial admitted that it had fallen below the standard of care in the preparation of the nutritional solution. But Lee Memorial also denied that its failure to comply with the standard of care had caused any injury to the Smiths’ daughter. Lee Memorial also asserted eighteen affirmative defenses.
The child receives care and treatment from a pediatric neurologist and several other physicians who are employed by Lee Memorial.[1] In November 2009, the Smiths moved for a protective order precluding counsel for Lee Memorial “from having ex parte communication[s] with [the child’s] current treating healthcare providers [that are] employed by Lee Memorial Health System.” On January 20, 2010, the circuit court granted the protective order sought by the Smiths. Subsequently, this court granted Lee Memorial’s petition for writ of certiorari and quashed the protective order. Lee Mem’l Health Sys. v. Smith, 40 So.3d 106 (Fla. 2d DCA 2010).
Shortly after the circuit court granted the Smiths’ requested protective order, Lee Memorial filed its own motion for protective order. Lee Memorial sought “an [o]rder prohibiting legal counsel for the [Smiths] from having ex parte communications with [the child’s] current treating healthcare providers that are employed by Lee Memorial Health System.” In support of its motion, Lee Memorial argued that rule 4-4.2 prohibited the Smiths’ counsel from communicating with any of the child’s treating physicians who are also employed by Lee Memorial without its counsel’s consent. After a hearing, the circuit court denied the motion. Lee Memorial’s petition for writ of certiorari followed.
II. THE STANDARD OF REVIEW
“In order to merit certiorari relief, a discovery order must ‘depart [] from the essential requirements of law, causing material injury to a petitioner throughout the remainder of the proceedings below and effectively leaving no adequate remedy on appeal.’ ” Lee Mem'l *811 Health Sys., 40 So.3d at 107 (alteration in original) (quoting Allstate Ins. Co. v. Langston, 655 So.2d 91, 94 (Fla.1995)). The second and third parts of this test are jurisdictional:
[A] petitioner must establish that an interlocutory order creates material harm irreparable by postjudgment appeal before this court has power to determine whether the order departs from the essential requirements of the law. If the jurisdictional prongs of the standard three-part test are not fulfilled, then the petition should be dismissed rather than denied.
Parkway Bank v. Fort Myers Armature Works, Inc., 658 So.2d 646, 649 (Fla. 2d DCA 1995).
III. DISCUSSION
On the issue of irreparable harm, Lee Memorial argues that the circuit court’s “order has the effect of allowing release of unauthorized and potentially damaging statements, including in the nature of ‘eat-out-of-the-bag’ material that cannot be remedied by appeal following trial.” Lee Memorial also points to its admission of a failure to meet the applicable standard of care as a factor rendering the prejudice of unguarded communications by its employees with the Smiths’ counsel as especially acute. Finally, Lee Memorial suggests that the circuit court’s refusal to enter the protective order has frustrated Lee Memorial’s effort “to protect itself from the danger of unfair exposure to potential additional liability, which protection is embodied in Florida Rule of Professional Conduct 4-4.2.”
The Smiths do not make a persuasive response to Lee Memorial’s arguments on the issue of irreparable harm. It is difficult for this court to assess the potential prejudice to Lee Memorial — if any — that may result if it is unable to limit and monitor all communications between its employee physicians and the Smiths’ counsel. Nevertheless, we conclude that review by certiorari is appropriate here because orders of the type under review have the potential to result in the disclosure of privileged information and an interference with the attorney-client relationship. See AlliedSignal Recovery Trust v. AlliedSignal, Inc., 934 So.2d 675, 677 (Fla. 2d DCA 2006); Estate of Stephens v. Galen Health Care, Inc., 911 So.2d 277, 279 (Fla. 2d DCA 2005); Lemieux v. Tandem Health Care of Fla., Inc., 862 So.2d 745, 747-48 (Fla. 2d DCA 2003); Hasan v. Garuar, 34 So.3d 785, 786-87 (Fla. 4th DCA 2010).
We turn now to the question of whether the circuit court’s order departs from the essential requirements of the law. Neither of the parties has directed us to any cases directly on point, and our independent research has not disclosed any. The absence of any authority on point requires an examination of the question presented in light of both the text and the rationale of rule 4-4.2.
Rule 4-4.2(a) provides, in pertinent part, as follows: “In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer.” Here, Lee Memorial asserted “that [the Smiths’] counsel will attempt to communicate with [the child’s] treating physicians employed by [Lee Memorial] and represented by counsel for [Lee Memorial] outside the presence of [its] counsel.” It argued that because the treating physicians were employees of Lee Memorial, they were persons represented by Lee Memorial’s counsel within the meaning of the rule 4^4.2. Thus communications by the Smiths’ counsel with the employee *812 treating physicians — absent consent from Lee Memorial’s attorneys — would be a violation of the rule.
The Smiths respond that rule 4-4.2 does not apply here because their counsel are not seeking to communicate with any Lee Memorial employees involved in the incident that is alleged to have resulted in the child’s injuries. Instead, counsel propose to communicate only with Lee Memorial employee health care providers involved in the treatment of the child. The Smiths conclude that to prohibit such contacts absent consent from Lee Memorial would have two deleterious consequences. First, it would improperly undermine the relationship between the Smiths and their counsel by making it impossible for counsel to speak with the child’s treating physicians. Second, it creates a legal paradox whereby the Smiths can speak to their child’s treating physicians, but counsel— their duly authorized legal representatives — cannot.
Lee Memorial replies that “rule 4-4.2 does not contain any exceptions relating to the substance of what a current employee may communicate.” Instead, Lee Memorial argues that the rule requires that counsel be present during the communication unless consent of opposing counsel is obtained. But the scope of the rule is not as broad as Lee Memorial would have it. First, as the comment to rule 4-4.2 explains, the prohibition against communicating with members of a represented organization is applicable only to three categories of persons or employees: (1) those who supervise, direct, or regularly consult with the organization’s lawyer concerning the matter; (2) those who have the authority to obligate the organization with respect to the matter; or (3) those whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability. See also Barfuss v. Diversicare Corp. of Am., 656 So.2d 486, 488 n. 4 (Fla. 2d DCA 1995), disapproved on other grounds by H.B.A. Mgmt., Inc. v. Estate of Schwartz, 693 So.2d 541 (Fla.1997); Browning v. AT & T Paradyne, 838 F.Supp. 1564, 1567 (M.D.Fla.1993).[2] Here, Lee Memorial has not shown (nor has it argued) (1) that any of the child’s treating physicians supervise, direct, or consult with the lawyers concerning the lawsuit; (2) that they have the authority to obligate the organization with respect to the lawsuit; or (3) that the treating physicians’ acts or omissions could in any way be imputed to Lee Memorial in connection with the lawsuit. In addition, there is no evidence that these physicians are “represented by counsel concerning the matter to which the communication relates.” See Fla. Rule of Prof 1 Conduct 4-4.2 cmt. (emphasis added).
In H.B.A. Management the supreme court explained the rule:
[I]t means an attorney cannot ethically communicate with an employee whose actions may impute negligence or criminal liability to the corporation or whose statements may constitute admissions at that time, i.e., at the time the current employee is acting or speaking. These categories clearly identify certain persons whose statements or actions, by *813 virtue of their present status as employees or agents, may directly affect their employer’s legal position.
693 So.2d at 545. This is so because “the purpose of the communication rule is not to protect a corporate party from revelation of prejudicial facts, but rather to preclude interviewing of employees who have authority to bind the corporation.” Id. at 544 (citing Fla. Bar Profl Ethics Comm., Formal Op. 88-14 at 3 (1989)).
Furthermore, in considering Lee Memorial’s arguments, it is appropriate to look at the broader picture. Today, physicians in a variety of specialties are employed by hospitals instead of in stand-alone, independent medical practices. See, e.g., Tarpon Springs Hosp. Found., Inc. v. Anderson, 34 So.3d 742, 744 (Fla. 2d DCA 2010) (obstetrician/gynecologist and nurse midwife were employed by the hospital where the plaintiff delivered her baby). And the fact of the hospital’s ownership of the medical practice and employment of the physicians and others working there may not be readily apparent to the physicians’ patients and the general public. The early to mid-1990s saw a surge in the acquisition of physician practices by hospitals. This trend accelerated again in the latter half of the past decade.[3] Thus, in many communities today, a significant number of the practicing physicians may be employed by a local hospital. This is precisely the situation that the Smiths’ attorneys encountered in this case. Some — if not all — of the child’s treating physicians are Lee Memorial employees.
It is extremely important — if not essential — for plaintiffs counsel in a medical malpractice case to interview and consult with his or her client’s treating physicians. Such informal contacts enable plaintiffs counsel to discover the facts, formulate legal theories, and develop strategies for the case. See Jerome N. Krulewitch, Ex Parte Communications with Corporate Parties: The Scope of the Limitations on Attorney Communications with One of Adverse Interest, 82 Nw. U.L.Rev. 1274, 1278-83 (1988). Although formal depositions may be used to accomplish the same ends, depositions are arguably an inferior means to obtain information necessary for plaintiffs counsel to prepare the case. See id. at 1279-80, 1283. The practical effect of the rule contended for by Lee Memorial would be to eliminate informal contacts when the client’s treating physician or physicians are employed by a defendant hospital. In that event, counsel’s contacts with the client’s treating physicians who are so employed would be limited to formal depositions. Thus the broader question posed by Lee Memorial’s petition is whether such a limitation on informal communications is consistent with the purpose of rule 4-4.2.
The comment to rule 4-4.2 summarizes the rule’s rationale as follows:
This rule contributes to the proper functioning of the legal system by pro *814 tecting a person who has chosen to be represented by a lawyer in a matter against possible overreaching by other lawyers who are participating in the matter, interference by those lawyers with the client-lawyer relationship, and the uncounseled disclosure of information relating to the representation.
Rule 4-4.2 cmt.[4] We conclude that the stated purposes of rule 4-4.2 would not be served by an interpretation that would prohibit plaintiffs counsel from informal communication with his or her client’s treating physicians — absent consent — simply because of the physicians’ adventitious employment by a defendant hospital.
We seriously doubt that the drafters of rule 4-4.2 and (ABA) Model Rule 4.2 on which it is based anticipated the relatively recent trend toward the employment of physicians by hospitals. This trend is driven by economic and financial forces affecting the medical profession and our health care system. The argument for the application of the rule under the circumstances of this case is based on happenstance — the accident that Lee Memorial happens to employ some or all of the child’s treating physicians. Here, informal contacts by plaintiffs’ counsel with the child’s treating physicians do not pose a threat that plaintiffs’ counsel will overreach, interfere with Lee Memorial’s relationship with its attorneys, or result in the uncounseled disclosure of information relating to the representation of Lee Memorial by its attorneys.
For these reasons, we conclude that the circuit court’s order under review does not depart from the essential requirements of the law. The circuit court correctly saw that the interest requiring protection here is the Smiths’ right to communicate with their child’s doctors through their duly authorized representatives, not the protection of a client-lawyer relationship. Accordingly, we deny the petition.
Petition denied.
MORRIS and BLACK, JJ, Concur.

. The Smiths do not appear to dispute Lee Memorial’s claim that the pediatric neurologist and several other of the child's treating physicians are Lee Memorial employees.

. Along the same lines, an ethics opinion interpreting the comparable (ABA) Rule 4.2, Model Rules of Professional Conduct, states: “When a corporation or other organization is known to be represented with respect to a particular matter, the bar applies only to communications with those employees who have managerial responsibility, those whose act or omission may be imputed to the organization, and those whose statements may constitute admissions by the organization with respect to the matter in question.” ABA Comm, on Ethics & Prof’l Responsibility, Formal Op. 95-396 at 1 (1995).

. For information on the acquisition of physician practices by hospitals and the economic factors driving this trend, see generally, Randy Bauman, Why Hospitals Are Buying Physician Practices ... Again, Delta Health Care, http://www.deltahealthcare.com/pdf/Why-Hospitals-Buy.pdf (last visited Nov. 29, 2010); Pamela Lewis Dolan, BMR courtship: Hospitals wooing doctors to stay afloat, amed-news.com (Aug. 23, 2010), http://www.ama-assn.org/amednews/2010/08/23/bica0823.htm; Steven A. Eisenberg, The Boomerang Effect: Hospital Employment of Physicians Coming Back Around, Physicians News Digest Online Edition (Feb. 4, 2009), http://www.physicians news.com/2009/02/04/the-boomerang-effect-hospitalemployment-of-physicians-coming-back-around; Peter A. Pavarini, Why Hospitals are Employing Physicians (Again), Stout Risius Ross (www.srr.com), http://www.szd. com/media/news/media. 1487.pdf (last visited Nov. 29, 2010).

. For a discussion of the purposes of the rule, see generally, Geoffrey C. Hazard, Jr. & Dana Remus Irwin, Toward a Revised 4.2 No-Contact Rule, 60 Hastings L.J. 797, 801-06 (March 2009) (discussing (ABA) Model Rules of Prof’l Conduct R. 4.2 (2008)).