LEWIS, J.
Ramsey Hasan seeks review of the decision of the Fourth District Court of Appeal in Hasan v. Garvar, 34 So.3d 785 (Fla. 4th DCA 2010), on the basis that it expressly and directly conflicts with the decision of this Court in Acosta v. Richter, 671 So.2d 149 (Fla.1996), as well as decisions of the First District Court of Appeal in Dannemann v. Shands Teaching Hospital & Clinics, Inc., 14 So.3d 246 (Fla. 1st DCA 2009) cert. denied, — U.S. -, 130 S.Ct. 2061, 176 L.Ed.2d 429 (2010), and Hannon v. Roper, 945 So.2d 534 (Fla. 1st DCA 2006), on a question of law. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

FACTS

Ramsey Hasan filed a medical malpractice action against Lanny Garvar, D.M.D., and his dental practice. Hasan alleges that Garvar’s failure to diagnose and treat his dental conditions resulted in a bone infection and a worsening of his dental problems, which caused severe and permanent physical and emotional damage. Specifically, Hasan contends that he suffered and continues to suffer physical and mental pain, grief, anguish, an inability to lead a normal life, permanent disfigurement, and permanent aggravation of a preexisting condition. Hasan claims that he has been forced to pay additional dental bills plus other expenses related to his injuries.
After receiving treatment from Garvar, Hasan sought medical treatment from Jennifer Sehaumberg, D.M.D., an oral and maxillofacial surgeon. Garvar acknowledges that a physician-patient relationship existed between Hasan and Sehaumberg. While in the process of scheduling Schaumberg’s deposition in this action in connection with her treatment of Hasan, Hasan learned that OMS National Insurance Company (OMSNIC) had retained an attorney to consult with Sehaumberg and to conduct an ex parte private predeposition conference with Sehaumberg. Sehaumberg is not a party in any underlying malpractice action against Garvar.
OMSNIC insures Garvar. OMSNIC also insures Sehaumberg. OMSNIC had previously retained an attorney to represent Garvar in the action Hasan filed against him. Originally, distinct law firms represented Sehaumberg and Garvar on behalf of OMSNIC. At some point, however, the attorney retained by the insurance company for Sehaumberg joined the law firm representing Garvar. Thereafter, OMSNIC retained another law firm to represent Sehaumberg. Although different attorneys represent Garvar and Sehaumberg, OMSNIC selected, retained, and paid for both attorneys.
When Hasan became aware that OMSNIC had selected and paid for an attorney to meet with Sehaumberg, Hasan moved for a protective order to prohibit the ex parte predeposition conference between Sehaumberg and the attorney provided by OMSNIC. The trial court denied Hasan’s motion, and, after writing a full opinion approving the trial court’s action, the Fourth District Court of Appeal denied Hasan’s petition for a writ of certiorari. Hasan, 34 So.3d at 786-87. According to the Fourth District, the ex parte conference was permissible because the trial court’s order contained a provision to prohibit Sehaumberg and her insurer-provided attorney from discussing privileged medical information pertaining to Hasan, and because Sehaumberg was meeting with the attorney assigned to her by *572 OMSNIC, not the attorney assigned to Garvar. Id. at 787. The Fourth District acknowledged that this Court has explicitly prohibited ex parte meetings between nonparty treating physicians such as Schaumberg and the defendant’s attorney since the Florida Legislature adopted a physician-patient confidentiality statute for patient medical information in 1988. Id.
Hasan contends that an ex parte prede-position conference between a nonparty treating physician, here Schaumberg, and an attorney who is selected and hired by the defendant’s insurance company violates the protections afforded by this State’s physician-patient confidentiality statute as delineated in section 456.057(8), Florida Statutes (2009), and leaves him without protection from disclosure of information. The statute provides, in pertinent part:
Except in a medical negligence action or administrative proceeding when a health care practitioner or provider is or reasonably expects to be named as a defendant, information disclosed to a health care practitioner by a patient in the course of the care and treatment of such patient is confidential and may be disclosed only to other health care practitioners and providers involved in the care or treatment of the patient, or if permitted by written authorization from the patient or compelled by subpoena at a deposition, evidentiary hearing, or trial for which proper notice has been given.
§ 456.057(8), Fla. Stat. (2009) (emphasis supplied).
Hasan asserts that this section, coupled with relevant precedent addressing physician-patient confidentiality, prohibits an ex parte conference between a treating non-party physician and the attorney assigned to the nonparty-physieian in this case. Hasan contends that ex parte conferences are prohibited even if there is a verbal representation not to discuss privileged information — in other words, matters related to the patient. Garvar, in contrast, contends that section 456.057(8) and current precedent do not prohibit an ex parte meeting between a nonparty physician and counsel provided by the insurance company even though it is agreed that the non-party treating physician will not be a defendant. Garvar alleges that to prohibit an ex parte meeting between a nonparty treating physician and counsel provided by the insurance company would violate the physician’s common law right to counsel and First Amendment right to freedom of speech.

ANALYSIS

At issue here is whether the patient confidentiality statute prohibits a nonparty treating physician from having an ex parte meeting with an attorney selected and provided by the defendant’s insurance company. We hold that the physician-patient confidentiality statute, section 456.057, prohibits such meetings and we quash the decision of the Fourth District. Given the broad protections afforded to patient information by the relevant confidentiality statute, and the equally protective judicial precedent with regard to this statute and information, we again hold that an ex parte meeting such as the one attempted here is prohibited irrespective of whether the attorney and physician claim they will discuss only non-privileged matters.

The History of Section 4.56.057

The history behind section 456.057 provides the foundation for our ruling that an ex parte meeting between a plaintiffs non-party treating physician and counsel selected and provided by the defendant’s insurer is prohibited. In Coralluzzo v. Fass, this Court held that no statutory or common law rule prohibited ex parte communications between defense counsel or *573 their representatives and a nonparty treating physician. 450 So.2d 858, 859 (Fla.1984). In that case, defense counsel arranged to meet ex parte with the plaintiff’s subsequent treating oral surgeon, which the plaintiff, upon learning of the pending meeting, sought to prevent. Id. at 858-59. The Court in Coralluzzo held that it could not prevent the ex parte meeting because no statutory privilege existed for the physician-patient relationship which prohibited such activity. Id. at 859 (stating that “no evidentiary rule of physician/patient confidentiality exists in Florida....”). At that time, the Legislature only provided for a very limited statutory privilege of confidentiality to protect patient medical records. Id.
In 1988, however, the Legislature broadened the statutory protections for physician-patient confidentiality. The statute, as currently amended, states in relevant part:
(7)(a) Except as otherwise provided in this section and in s. 440.13(4)(c), such [medical] records may not be furnished to, and the medical condition of a patient may not be discussed with, any person other than the patient or the patient’s legal representative or other health care practitioners and providers involved in the care or treatment of the patient, except upon written authorization of the patient.
[[Image here]]
(8) Except in a medical negligence action or administrative proceeding when a health care practitioner or provider is or reasonably expects to be named as a defendant, information disclosed to a health care practitioner by a patient in the course of the care and treatment of such patient is confidential and may be disclosed only to other health care practitioners and providers involved in the care or treatment of the patient, or if permitted by written authorization from the patient or compelled by subpoena at a deposition, evidentiary hearing, or trial for which proper notice has been given.
§ 456.057(7)(a), (8), Fla. Stat. (2009) (emphasis supplied).[1]
The Senate Judiciary Committee staff report provided at the time the relevant statute was enacted that:
in addition to medical records, the medical condition of a patient may not be disclosed to any person other than the patient, the patient’s legal representative, or other health care providers involved in the treatment of the patient, except upon written consent of the patient. Further, the bill specifies that information disclosed to a health care practitioner by a patient is confidential and may be disclosed only to other health care providers involved in the care of the patient or by written authorization of the patient or by subpoena. In addition, this information may be disclosed by a health care provider to his attorney if the provider expects to be named as a defendant in a negligence case.
Fla. S. Comm, on Judiciary, CS/SB 1076 (1988) Staff Analysis 1 (May 19, 1988) (on file with the State Archives of Florida) (emphasis supplied). Accordingly, this Court has interpreted the statute at issue in light of its purpose to provide broad *574 patient protection. See Acosta, 671 So.2d at 156.
In Franklin v. Nationwide Mutual Fire Insurance Co., the First District Court of Appeal was the first court to address the amended statute. 566 So.2d 529 (Fla. 1st DCA 1990). In Franklin, the district court quashed the trial court’s order requiring the plaintiff to authorize a meeting between his treating physician, who was not a party to the malpractice action, and defense counsel. 566 So.2d at 530. According to the district court, to authorize such meetings violated the physician-patient confidentiality statute which provides for only three situations in which the absolute patient confidentiality is waived:
1) in a medical negligence action, when a health care provider is or reasonably expects to be named as a defendant,
2) by written authorization of the patient, or
8) when compelled by subpoena at a deposition, evidentiary hearing, or trial for which proper notice has been given.
Id. at 582. In Acosta, this Court affirmed that confidentiality is waived in only those three circumstances and approved the district court’s analysis in Franklin. See Acosta, 671 So.2d at 151-53. By limiting disclosures to these three circumstances, the Legislature indicated its intent to safeguard privileged medical information and to “strictly control the dissemination of a Florida patient’s medical information.” Id. at 155 (emphasis supplied); see also State v. Sun, 82 So.3d 866, 872 (Fla. 4th DCA 2011) (“The plain language protects information made ‘in the course of the care and treatment,’ § 457.057(8), and is therefore not limited to information necessary for treatment. Indeed, courts have consistently held that the statute expressly created a broad doctor-patient privilege, especially in light of the earlier, more limited statutory privilege.”). In Acosta, we noted that the statute provides that
the defendant’s discovery of the privileged matter can be compelled only through the subpoena power of the court with proper notice in accordance with the discovery provisions of the rules of civil procedure. The reference to “proper notice” is unquestionably included to preclude the type of unilateral, ex parte interrogation of a physician permitted by the order under review and envisioned by respondent’s counsel.
671 So.2d at 151-52 (quoting Franklin, 566 So.2d at 532) (emphasis supplied).
In Acosta, this Court also addressed when patient medical records may be disclosed. Id. at 155. At the time Acosta was rendered, the Legislature had carved out only three limited exceptions to when this may happen. Since then, the Legislature has added two more. These exceptions, like those provided in medical negligence actions, illustrate the Legislature’s emphasis on providing a limited and specific avenue of disclosure for patient medical information. Section 456.057(7)(a) lists the exceptions for the disclosure of medical records as follows:
[Medical] records may be furnished without written authorization under the following circumstances:
1. To any person, firm, or corporation that has procured or furnished such examination or treatment with the patient’s consent.
2. When compulsory physical examination is made pursuant to Rule 1.360, Florida Rules of Civil Procedure, in which case copies of the medical records shall be furnished to both the defendant and the plaintiff.
3. In any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper no *575 tice to the patient or the patient’s legal representative by the party seeking such records.
4. For statistical and scientific research, provided the information is abstracted in such a way as to protect the identity of the patient or provided written permission is received from the patient or the patient’s legal representative.
5. To a regional poison control center for purposes of treating a poison episode under evaluation, case management of poison cases, or compliance with data collection and reporting requirements of s. 395.1027 and the professional organization that certifies poison control centers in accordance with federal law.
§ 456.057(7)(a)(1)-(5), Fla. Stat. (2009). In Acosta, this Court noted that “[t]hese ‘exceptions’ are straightforward and require no further explanation here.” 671 So.2d at 155.
To resolve the question currently before this Court — whether an ex parte meeting with a plaintiffs treating physician may occur — we “invoke the polestar of statutory construction: plain meaning of the statute at issue.” Id. at 153.

Plain Meaning

In Acosta, we rejected the suggested interpretation that the exceptions to the confidentiality privilege were intended to create such a broad exception that essentially it does away with the physician-patient privilege in all medical negligence cases. Id. at 155. By including the phrase “when a health care provider is or reasonably expects to be named as a defendant,” the Legislature recognized that there are instances when a health care provider is not, and does not reasonably expect to be, named as a defendant. Under such circumstances, the exceptions to the statute, which otherwise prohibit disclosure, are not triggered. Id. (citing Castillo-Plaza v. Green, 655 So.2d 197, 206 (Fla. 3d DCA 1995) (Jorgenson, J., dissenting)). Conversely, when a health care provider is or expects to be named as a defendant, “common sense dictates that ... [the] provider should be able to discuss patient information to defend [himself or] herself in a medical negligence action brought by the patient.” Id. at 156. This exception, nevertheless, is “narrow in scope and patently logical and consistent with other provisions of the statute, [which] contrasts sharply with the idea that the legislature intended to do away with the privilege entirely....” Id.
The Legislature made clear its intention to limit disclosures of patient information not only by providing specific, limited exceptions to this protection, but also by explicitly stating this purpose. In subsection (7)(a) of the statute, the Legislature provided the following language: “Except as otherwise provided in this section ... such records may not be furnished to, and the medical condition of a patient may not be discussed with, any person other than the patient or the patient’s legal representative_” § 456.057(7)(a) (emphasis supplied).[2] In Acosta, we stated that this “sentence creates a broad and express privilege of confidentiality as to the medical records and medical condition of a patient.” 671 So.2d at 154 (footnote omitted). The statute’s “simple, direct language,” coupled with the legal history of section 456.057, informed our conclusion that “the primary purpose of the 1988 amendment was to create a physi *576 cian-patient privilege where none existed before, and to provide an explicit but limited scheme for the disclosure of personal medical information.” Id. (emphasis supplied); see also West v. Branham, 576 So.2d 381, 388 (Fla. 4th DCA 1991) (“[T]he purpose of the statute is to preserve a patient’s right to confidentiality.... This includes closing the door to the previous practice of many defense attorneys of meeting privately or otherwise communicating ex parte with the plaintiffs treating physicians.” (emphasis supplied)).
Thus, the statutory language and legislative history demonstrate that ex parte meetings between a nonparty treating physician and outsiders to the patient-health care provider relationship are not permitted. We hold that this same language also prohibits ex parte meetings between a nonparty treating physician and others even with the representations as to the content of the meeting here. There is no protection to the patient if the view of the dissent is implemented.
Since Acosta, courts have continued to issue opinions consistent with Acosta’s broad protections in favor of physician-patient confidentiality. In so doing, courts have been required to address whether the statute is violated if the counsel who seeks to communicate with the nonparty treating physician is not defense counsel per se, but counsel selected and provided by the defendant’s insurer. Consistent with prior precedent, we conclude that counsel provided by the defendant’s insurer also presents the same compromised interest as other outsiders, and, therefore, is barred from meeting with a nonparty treating physician.
In Hannon, the First District addressed whether the physician-patient confidentiality statute prevented a nonparty physician from meeting with his own attorney. See 945 So.2d at 535. The district court held that such a meeting was prohibited because “the unambiguous language of section 456.057(6) ... clearly forbids the [nonparty physician] from disclosing information concerning the [patient’s] medical condition and treatment to an attorney hired by a representative of the defendant.” Id. at 536. Integral to the court’s holding was that the defendant’s representative had hired the physician’s attorney, and neither the physician nor the representative expected to be named as a defendant. Id.
Similarly, in Dannemann, the First District quashed a trial court order which had permitted nonparty treating physicians to meet with others. See 14 So.3d at 248. In that case, the defendant’s insurance company, which also provided the defendant’s counsel, hired counsel to represent the nonparty physicians in pre-deposition conferences.[3] In reversing the trial court’s order, the Dannemann court reiterated its holding in Hannon that the statute prohibited nonparty physicians from discussing privileged information with others outside the physician-patient relationship. Id. at 247.
Here, given the breadth of the applicable statute and the interpretation outlined in Acosta and its progeny, Gar-var’s attempt to skirt the protections afforded by the patient confidentiality statute are to no avail. Acosta recognizes that the patient’s right to confidentiality is compromised if the defendant’s insurer is per *577 mitted to invade the protections and prohibitions placed upon the patient’s nonparty treating physician through secret private meetings. Judicial precedent has consistently emphasized that the statute’s primary purpose is to broadly protect against disclosures of confidential patient information, including inadvertent disclosures. See Acosta, 671 So.2d at 153 (quoting Kirkland v. Middleton, 639 So.2d 1002, 1003 (Fla. 5th DCA 1994) (“Were unsupervised ex parte interviews allowed, medical malpractice plaintiffs could not object and act to protect against inadvertent disclosure of privileged information, nor could they effectively prove that improper disclosure actually took place.”)); Lemieux v. Tandem Health Care of Florida, Inc., 862 So.2d 745, 750 (Fla. 2d DCA 2003) (“Patently, the purpose of the statute is to preserve a patient’s right to confidentiality with respect to information disclosed to a health care provider in the course of the care and treatment of a patient and to limit the conditions under which such information may be disclosed to others.”). If an ex parte meeting between the non-party treating physician and counsel provided by defendant’s insurer is permitted, then insurance companies could simply hire counsel to circumvent the statutory protection. Consequently, we hold that section 456.057 prohibits ex parte meetings between a patient’s nonparty treating physician and counsel provided by the defendant’s insurance company, as is the situation in the case at hand.

First Amendment Concerns

In Acosta, this Court rejected the notion that the statute at issue violates a physician’s First Amendment right to free speech. See 671 So.2d at 156. We “[found] no First Amendment flaw” because the statute strikes a balance between a patient’s individual privacy rights and society’s need for limited disclosure of medical information. Id. Physicians’ free speech rights are not completely inhibited because physicians may discuss confidential patient information if they become parties to a medical negligence legal action. By providing this “safeguard, as well as providing other means for disclosure,” we held that the Legislature properly created a limitation on speech concerning a patient without violating the First Amendment. Id.
In Dannemann, the First District furthered the discussion regarding possible constitutional issues when it rejected the claim that a nonparty physician’s right to counsel is violated by this statute. 14 So.3d at 248. The district court noted its earlier Hannon decision and that it “did not discuss the constitutional issues raised there.... ” Id. Even though the Danne-mann court acknowledged that a decision that failed to address a question that had been raised is not authoritative, it also regarded this lack of discussion as an indication that constitutional concerns “were considered and rejected” by the Hannon court. Id. According to the First District, the Hannon court would not have granted relief to the plaintiff-patient if it “had been persuaded the statute was constitutionally infirm.” Id. Thus, the Dannemann court concluded that the Hannon and Acosta decisions held that the statute at issue did not infringe on physicians’ constitutional rights. Id.
We agree with and reaffirm our prior court ruling that section 456.057 does not infringe upon a physician’s right to free speech or right to counsel because it allows for such meetings if a physician becomes a party to a legal action and provides for disclosures if properly protected.
Discussions of Non-Privileged Matters as “Pure Sophistry ”
The Acosta opinion concludes with these final remarks:
*578 Finally, we reject the contention that ex parte conferences with treating physicians may be approved so long as the physicians are not required to say anything. We believe it is pure sophistry to suggest that the purpose and spirit of the statute would not be violated by such conferences.
671 So.2d at 156 (emphasis supplied).
This statement touches on an issue particularly salient to the Hasan case. Here, the trial court’s order prohibited “any discussion regarding the plaintiffs care and treatment” when it permitted Schaumberg to meet with the attorney selected, hired, and paid for by the insurance company. See 34 So.3d at 786. Garvar contends that Schaumberg should be able to speak with this attorney, ex parte, before her deposition with Hasan to discuss concerns and issues that are unrelated to Hasan’s care and treatment. Garvar notes the following issues that Schaumberg may wish to address:
1. General questions about deposition and trial procedure, including the right to refuse to answer questions and the right to protect privileged or personal information,
2. The potential for legal exposure in the lawsuit as a Fabre[4] defendant or in a subsequent indemnity action, and
3. The potential of providing testimony that could affect board certification or result in negative media exposure.
By listing other discussion points not addressing privileged matters, Garvar seeks to demonstrate that the disputed communications fall beyond the scope of section 456.057(8). Acosta’s characterization of ex parte conferences between nonparty physicians and defense counsel as “pure sophistry,” wherein the physician is not required to say “anything,” answers the question of whether the statute’s purpose and spirit would be violated by such ex parte meetings with a resounding “yes.” See 671 So.2d at 156. OMSNIC’s efforts to foster an environment conducive to inadvertent disclosures of privileged information by providing Schaumberg with an attorney are impermissible. Again, we affirm Acosta’s holding in this regard.

CONCLUSION

We hold that section 456.057(8) creates a broad and expansive physician-patient privilege of confidentiality for the patient’s personal information with only limited, defined exceptions. The privilege prohibits ex parte meetings between nonparty treating physicians and others outside the confidential relationship whether or not they intend to discuss privileged or non-privileged matters without measures to absolutely protect the patient and the privilege. Accordingly, we quash the decision of the Fourth District in Hasan and approve the First District’s decisions in Dannemann and Hannon.
It is so ordered.
PARIENTE, QUINCE, LABARGA, and PERRY, JJ., concur.
POLSTON, C.J., dissents with an opinion, in which CANADY, J., concurs.

. The physician-patient confidentiality provision of section 456.057 has been renumbered and amended multiple times. In 2007, the Florida Legislature renumbered the confidentiality provision to what it is today. Earlier case law reflects the prior statutory numbers. The Acosta opinion, in particular, refers to the statute at issue as section 455.241. Our opinion in this case references section 456.057 in its most current form and incorporates all modifications to the statute since the Acosta opinion.

. "Such records” refers to section 456.057(6), which addresses records relating to physical or mental examinations or treatment prepared by a licensed health care practitioner. See § 456.057(6), Fla. Stat. (2009).

. Garvar notes that the insurer in Dannemann was a self-insurance program, as opposed to a "conventional” insurer like OMSNIC, Gar-var’s insurer. Garvar does not explain why this distinction matters, such that one type of insurer should be permitted to provide counsel to a nonparty physician and another type should not.

. Fabre v. Marin, 623 So.2d 1182 (Fla.1993).